(No. 32531.

ALBERT B. RUDDOCK *et al.*, Appellees, *vs.* AMERICAN MEDICAL ASSOCIATION, Appellant.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

LOESCH, SCOFIELD & BURKE, of Chicago, for appellant.

DAILY, DINES, Ross & O'KEEFE, of Chicago, (HOMER D. DINES, JOHN M. CONNERY, and EDWARD K. VINCEK, of counsel,) for appellees.

Mr. CHIEF JUSTICE CRAMPTON delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook County which ordered defendant, the purchaser in a contract for the sale of real estate, to specifically perform its contract with plaintiffs, who were the vendors.

The case was decided upon the pleadings, which consisted of a complaint, answer, and plaintiffs' motion for judgment on the pleadings, which motion was allowed. Plaintiffs' motion admitted all the facts well pleaded in defendant's answer and challenged the legal sufficiency of such facts to constitute a defense. (*Giese* v. *Terry,* 382 Ill. 34.) It is therefore necessary to consider the complaint and answer in detail so that we can determine whether the answer of defendant raised any defense.

The following material facts are admitted by the pleadings: One Albert M. Billings was the owner of the real estate here involved, prior to his death in 1897. By his will, he devised this property, commonly known as 530-536 N. State Street, Chicago, as follows: Two thirds thereof for life to testator's son, Cornelius Billings, and one third thereof for life to testator's grandson, Albert Ruddock. Upon the death of Cornelius Billings without issue surviving, the remainder passed to Albert Ruddock for life; upon the death of Albert Ruddock without issue, the remainder

passed to testator's brother, John Billings, if alive at the time of Albert Ruddock's death, and to testator's nephews and nieces living at said time. It will be noted that no provision was made for the event of the death of either life tenant leaving issue surviving.

In 1899, the will was construed by the circuit court of Cook County, which appointed trustees to manage testator's property, including that involved here, during the lives of the life tenants. In addition, the decree found that in the event that either of said life tenants died leaving issue surviving him, the remainder interest passed to said issue. The 1899 decree gave said trustees power to sell the property but provided that "no sale * * * shall be made by said trustees without first procuring the express order and direction of said Court."

Cornelius Billings died in 1937, leaving as his only issue Blanche Pauline Vander Poel, one of the plaintiffs, to whom the trustees conveyed title in 1938, pursuant to an order of court entered in the original chancery proceedings.

In 1947, the surviving trustees and Blanche Pauline Vander Poel, as lessors and vendors, entered into a lease and agreement with defendant, which agreement is the one involved herein. Merritt Kirk Ruddock and Billings Kirk Ruddock, who were the only children of Albert Ruddock, joined in said lease and agreement for the purpose of being bound by their provisions in the event that title to said real estate would vest in them by the death of the said Albert B. Ruddock. We may disregard the provisions of the lease, for they are not material here. The agreement provided that if, at any time the lease remained in effect, the lessors were able to convey to lessee a merchantable title to said property, the lessors agreed to sell and lessee agreed to buy it for $125,000. It was provided in the agreement that merchantable title might be evidenced by a report on title to be made by Chicago Title and Trust Company, guaranteeing title in lessors, subject to the usual terms, condi-

tions and exceptions contained in the regular form of owner's title guarantee policy or report on title, and subject to certain restrictions of record with reference to sale or use of the premises, and further subject to a certain petition for condemnation of a portion of said property filed in the superior court of Cook County. Defendant acknowledged in said agreement that it had been informed by lessors that title to an undivided two thirds of said property was vested in Blanche Pauline Vander Poel by virtue of said will and deed; that Albert Ruddock was still living and his two sons, Merritt Kirk Ruddock and Billings Kirk Ruddock, had a contingent interest therein; and that said sons were joining in the agreement so as to be bound thereby in the event they survived their father. Defendant further acknowledged that it had been informed by lessors that the powers of the trustees to sell were subject to the authority of the court. It was further agreed that lessors were under no obligation to acquire any outstanding contingent interest to perfect their title although they might, in their discretion, acquire such an interest and thereupon demand performance. Upon the furnishing of a report on title, subject only to the exceptions referred to above and "the usual objections contained in owners' guarantee policies issued by Chicago Title and Trust Company," the sale was to be closed through an escrow with said company "in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then furnished and in use by the Chicago Title and Trust Company with such special provisions to be inserted therein as may be required to conform with said report on title."

In 1949 an order was entered in the original chancery proceedings making any living nephews and nieces of testator parties to the suit, and thereafter an order was entered finding that said living nephews and nieces had been made parties as "unknown heirs or devisees of Albert M. Billings, deceased," and that due notice had been given them by

publication. By said order it was found that all of testator's nephews and nieces were deceased, so that their contingent interests had terminated. It was further found that John D. Billings, testator's brother, was deceased, so that his contingent interest was likewise terminated. It was ordered that the unknown heirs and devisees of testator, together with any after-born children or grandchildren of Albert Ruddock who might be living at his death, were bound by the original 1899 decree and all subsequent decrees. By this order, the trustees were expressly authorized to join with Blanche Pauline Vander Poel in any conveyance. In 1950 an order was entered expressly authorizing the sale of the property involved herein to defendant.

In 1950, while the lease was in force, lessors tendered a report of title to defendant and demanded performance of the agreement, and thereafter, in the same year, made a second tender and demand. Defendant refused to perform the agreement, and, in letters written by its attorneys to plantiffs' agent, set forth the grounds of their refusal to perform, which were as follows: Lessors were unable to furnish merchantable title because of (A) an ordinance of the city of Chicago providing for the widening of North State Street by the acquisition of adjoining property, which included the property involved herein; (B) lack of authority of trustees to sell; (C) the report on title specified that deeds should be obtained from Albert B. Ruddock and spouse and his children and respective spouses; (D) said report on title was subject to the right of any party interested to set aside, reverse or modify any of the orders in said chancery proceedings by any direct proceedings; (E) the issuance of a Chicago Title and Trust Company guaranty policy would not give them a merchantable title, even if all objections were waived by said company, since said policy does not guarantee a merchantable title, but only agrees to indemnify the policyholder from loss in the event of defects in the title. A further objection was that

the agreement was void for indefiniteness since the language quoted above pertaining to the escrow agreement did not specify the terms of said agreement and particularly did not provide whether the deeds should be recorded before the money is paid over to lessors.

The foregoing facts stand admitted and we must determine whether, upon these facts, plaintiffs were entitled to a decree. In addition to the objections to title noted above, defendant claims that plaintiffs are not entitled to relief for the following reasons: Plaintiffs had an adequate remedy at law; the agreement provided that upon default by defendant, lessors could terminate it, which defendant claims was their sole remedy; plaintiffs were guilty of *laches* in attempting to enforce the agreement; and finally, that the agreement lacked mutuality.

Defendant's first objection was to the ordinance which, it will be noted, provided for the eventual taking of some of the property here involved, as did the condemnation proceedings referred to in the agreement. The agreement provided that in the event the condemnation proceedings proceeded to judgment before the consummation of the sale, the agreement could be canceled by either party. The filing of the petition was not a taking of the property, and likewise the passage of the ordinance was not. (*Mills* v. *Forest Preserve Dist.* 345 Ill. 503.) The parties contemplated that the property might eventually be taken by power of eminent domain and agreed that, if it were, the agreement could be canceled. Until such time, however, the agreement was to remain in force. The passage of the ordinance had no more effect on the property than the filing of the condemnation proceedings. Since the property had not actually been taken under the ordinance at the time of the tender, we are of the opinion that this objection was without merit.

The lack of authority on the part of the trustees to sell is predicated upon the decree of 1899, which provided that court approval of the sale was necessary, and also upon

the contention that none of the proceedings in the chancery suit were binding upon possible after-born children of Albert Ruddock.

The fact that approval was necessary before sale does not render the agreement to sell void. In the agreement it was expressly recognized that the power of the trustees to complete the sale was subject to court approval, and such approval was actually obtained prior to plaintiffs' tender. An agreement to sell is far different than a sale. (*Keogh* v. *Peck,* 316 Ill. 318.) While the actual sale, or transfer of title by the trustees would not be valid without court approval, the agreement to sell, subject to approval by the court, needed no prior approval.

Nor do we believe that defendant's objection concerning after-born children is well founded. The children of Albert Ruddock were parties to the proceedings wherein the sale to defendant was approved. These children had the same interest as any possible after-born children or grandchildren and, under the familiar doctrine of representation, must be held to represent the interests of any such after-born persons. (*Hale* v. *Hale,* 146 Ill. 227; *Denegre* v. *Walker,* 214 Ill. 113; *Northern Trust Co.* v. *Thompson,* 336 Ill. 137.) The decree, therefore, was valid as to any after-born children or grandchildren.

The next two objections, being those referred to herein as "C" and "D" referred to notations appearing on the Chicago Title and Trust Company report on title. Said report specifically stated that these notations would be removed upon a conveyance to a purchaser for value. Since defendant was such a purchaser, these notations could be ignored and the report of title, as submitted to defendant, reported a merchantable title. In the contract defendant agreed to accept as evidence of merchantable title a report on title furnished by this company, and the case is quite similar to *Mackie* v. *Schoenstadt,* 307 Ill. 398. In that case plaintiff agreed to furnish a merchantable title, and it was

agreed that a guaranty policy made by the same company would be furnished. Such a policy was furnished, but defendant claimed that this was not sufficient evidence of title. In disposing of this contention we said: "Appellee was to furnish in a reasonable time a guaranty policy made by the Chicago Title and Trust Company. She did procure and tender the guaranty policy, and while it was not an abstract of the title, the policy was reasonable proof appellee's title was good. She never agreed to furnish an abstract."

What is said above also disposes of defendant's fourth contention, referred to herein as "E," to the effect that such a policy guarantees nothing and is merely a policy of indemnity. By the contract it agreed to accept such a policy and is in no position now to challenge its sufficiency.

We are of the opinion that defendant's contention that the contract was void for indefiniteness is also without merit. While the terms of the escrow agreement were not set forth in the agreement, reference was made to the "usual form" of agreement, a form which is commonly used in Cook County and elsewhere. Not every detail must be covered in a contract for it to meet the test of definiteness, and a contract is sufficiently definite if the court is able from its terms and provisions, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do. (*Burns* v. *Epstein,* 413 Ill. 476; *Welsh* v. *Jakstas,* 401 Ill. 288.) We are of the opinion that the contract in the instant case met this test.

Defendant next contends that since plaintiffs sought only a money payment, they had an adequate remedy at law. It has long been well settled in this State that a vendor in a real estate contract may have specific performance, even though he seeks only money. *Andrews* v. *Sullivan,* 2 Gilm. 327; *Heller* v. *McGuin,* 261 Ill. 588.

It is also urged that, since the agreement provided that upon default by defendant plaintiffs could terminate this

agreement, this was the only remedy which plaintiffs had. This contention is manifestly unsound. If such were the law, defendants would have only to default, and thus eliminate their obligations under the contract and profit by their own default. True, plaintiffs had the option of terminating the contract, but this was their option, not the defendant's. Plaintiffs chose not to terminate the contract and properly proceeded to enforce the same. Defendant relies on cases where the contract called for damages in event of default and it was held that the innocent party is limited to his action at law. These cases are not in point here.

Defendant argues that plaintiffs were guilty of *laches* in tendering title and, after defendant's refusal, in bringing suit. In support of this objection, defendant states that no tender was made until June, 1950, whereas the ordinance referred to above was passed in January, 1949. Defendant finally refused the tender in September, 1950, and suit was not brought until October, 1951. It should be recalled that plaintiffs did not obligate themselves to perfect their title at any particular time and defendant obligated itself to purchase at any time within the term of the lease. Tender was made within said term, and the defendant, having agreed to purchase, cannot raise the defense of *laches* unless it can show that it was prejudiced by the delay. No such prejudice is shown by the pleadings.

It is finally urged that the contract was lacking in mutuality and that therefore plaintiffs cannot specifically enforce the same. A like contention was made in *Heller* v. *McGuin,* 261 Ill. 588, under a very similar set of facts. There, the parties entered into a lease and a contract for purchase simultaneously, as in the case at bar. It was known at the time of contracting that seller did not have a good title, but he agreed to furnish one when he conveyed. In an action for specific performance by vendor, vendee claimed that since vendor did not obligate himself to procure a good title, but only to convey if he did procure

it, the contract was lacking in mutuality. We there held that the vendor could enforce the contract. In the case at bar, the lessors did not have a good title when the contract was made, and did not obligate themselves to get a good title, but only to convey if they did. What was said in *Heller* v. *McGuin* is applicable here.

We are of the opinion that the facts admitted by the pleadings entitled plaintiffs to relief. The trial court, therefore, properly entered a decree for plaintiffs upon the pleadings and said decree is affirmed.

*Decree affirmed.*