ROBERT L. CALVETTI *et al.*, Plaintiffs-Appellants, v. MICHAEL A. CRISMORE *et al.*, Defendants-Appellees.

Third District    No. 3—88—0015

Opinion filed October 31, 1988.

Cassidy & Mueller, of Peoria (Timothy J. Cassidy, of counsel), for appellants.

Mark D. Stuaan, of Leiter, Sahn, Brady & Associates, of Peoria (John T. Brady, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiffs-appellants (Calvettis) appeal from the order of the trial court allowing the motion to dismiss of defendants-appellees (Crismores) and denying the Calvettis' motion to reconsider. The questions raised are on the pleadings.

The Calvettis, as sellers, and Crismores, as buyers, entered into an agreement for warranty deed dated July 30, 1982, whereby the Calvettis sold their interest in rental property located in Peoria County to the Crismores. An amended agreement for warranty deed (agreement) was executed on August 22, 1986. By the terms of the agreement, the Crismores were to pay the purchase price of $302,000 in monthly installments, after which the Calvettis were to deliver a warranty deed to the Crismores.

On April 7, 1987, the Calvettis filed a complaint for specific performance alleging that the Crismores had failed to make payments due on March 1, 1987, and April 1, 1987. On July 2, 1987, the Calvettis, by grant of court, filed an amended complaint seeking the balance due under the contract plus attorney fees. The Crismores filed a motion to dismiss, pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), alleging that the action was barred because the Calvettis had elected the remedy of forfeiture of the agreement. The trial court, by order dated August 6, 1987, granted the Crismores' motion. The Calvettis' motion to reconsider was subsequently denied by order dated December 11, 1987.

The procedural issue is whether the trial court erred in granting the Crismores' motion to dismiss and in denying the Calvettis' motion to reconsider. In determining the procedural issue, we must consider the question of whether, under the facts as alleged in the pleadings,

affidavits and depositions on record, the Calvettis, by their actions, elected the remedy of forfeiture, thus precluding any recovery for money damages under a suit for specific performance.

■ It is well settled in Illinois law that an election of the remedy of forfeiture forecloses the possibility of pursuing money damages for payments owed under an installment contract. (*Dahm, Inc. v. Jarnagin* (1985), 133 Ill. App. 3d 14, 478 N.E.2d 641; *Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 464 N.E.2d 292.) If the contract provides a procedure for forfeiting the contract, however, the party forfeiting the contract must do so in the manner so provided. *Dahm*, 133 Ill. App. 3d at 15, 478 N.E.2d at 643.

Three paragraphs of the agreement are relevant to the issue presented. Paragraph 3 provides:

> "In the event of failure of the *** [Crismores] *** to make either of the payments or any part thereof, or perform any of the covenants hereof on the part of *** [the Crismores] *** hereby made and entered into, this contract shall, at the option of *** [the Calvettis] ***, be forfeited and determined, and *** [the Crismores] ***, shall forfeit all payments made on the contract and such payments shall be retained by *** [the Calvettis] *** in full satisfaction and in liquidation of all damages *** [the Calvettis] *** sustained, and *** [the Calvettis] *** shall have the right to re-enter and take possession of the premises aforesaid."

Paragraph 15 provides:

> "[The Crismores] *** also agree[ ] that if there is any default in any payments hereunder, the *** [Calvettis] *** may at their option re-enter and collect rents and apply them to the contract balance hereunder."

Paragraph 19 provides:

> "Quitclaim Deed has been executed by *** [the Crismores] ***, conveying said premises to *** [the Calvettis,] *** and has been delivered to escrowee, *** JOHN G. SAHN, together with an executed copy of the original agreement. Said deed is to be held by escrowee and delivered to *** [the Calvettis'] *** upon 30 days notice of *** [the Crismores'] *** uncured default under the provisions of this agreement *** or upon receiving a court order from a court having jurisdiction granting *** [the Calvettis] possession of the premises hereunder."

The Crismores failed to make the March 1987 payment as required under the agreement and orally advised the Calvettis that they were unable to make future payments. As a result, on March 25,

1987, the Calvettis' attorney sent a letter to the Crismores advising that pursuant to paragraph 15 of the agreement the Calvettis were going to seize rents and apply them to the contract balance. The Calvettis' attorney also directed letters to each of the tenants advising them to make rental payments to Mr. Calvetti. Michael Crismore, however, stated by affidavit that prior to March 25, 1987, he authorized the mailing of a rent list to the Calvettis and discharged his rental agent based upon a conversation with Mr. Calvetti on March 15, 1987. The record also indicates that on March 24, 1987, the Crismores unilaterally executed a quitclaim deed conveying their interest in the subject property to the Calvettis. The deed, having never been delivered to the Calvettis, was filed for recording on March 26, 1987. Further, on March 26, 1987, Mr. Crismore directed and posted a letter to all tenants informing them that the Crismores no longer had any interest in the property. Apparently as a response to the actions of the Crismores, the Calvettis' attorney subsequently sent separate letters to the Crismores and their attorney explaining that the Calvettis were not forfeiting the contract, but merely exercising their right under paragraph 15 to reenter and collect rents.

The Crismores argue that the election of the Calvettis to reenter and collect rents amounts to an election to forfeit the contract. The trial court agreed with this argument stating in its order of August 6, 1987, that "for the purpose of rental property, the seizure of rents by a contract seller constitutes an election of remedies under the contract for forfeiture thereof and precludes any contrary election *** any provision of the contract to the contrary notwithstanding." The Crismores additionally argue that the actions of the Calvettis caused them to change their position relative to the property by filing a quitclaim deed conveying their interest to the Calvettis.

On the other hand, the Calvettis argue that paragraph 19 specifies the method of forfeiting the contract, to wit, an escrowed quitclaim deed is to be delivered to the Calvettis upon 30 days' written notice to the escrowee of a default or upon court order. The Crismores counter that paragraph 19 says nothing of forfeiture, but merely prescribes a method of clearing title. Instead, paragraph 3 regards forfeiture of the contract and provides that the Calvettis may "re-enter and take possession" of the premises. This language, they argue, is substantially similar to the provision of paragraph 15 allowing the Calvettis to "re-enter and collect rents."

In our view the contract does not speak directly as to how a forfeiture is to be declared. However, it is settled that "(a) declaration of forfeiture must be unambiguous and convey a firm purpose to in-

sist upon forfeiture." (*Dahm, Inc. v. Jarnagin* (1985), 133 Ill. App. 3d at 15, 478 N.E.2d at 643.) The Calvettis' letter of March 25, 1987, does not clearly insist upon forfeiture. Nowhere in the letter did the Calvettis' attorney state that the Calvettis were intending to forfeit the contract. The letter clearly states that the Calvettis were invoking paragraph 15 of the agreement to collect rents. No mention is made of the Calvettis' intention to forfeit the contract.

We likewise believe the Calvettis' letters of March 25, 1987, to the Crismores and the tenants of the property do not, in effect, constitute a forfeiture. It is elementary contract law that all provisions of a contract are to be given effect, if possible. From reading the agreement, we do not consider it to have been the intent of the parties at the time of formation to construe the remedy of collecting rents under paragraph 15 as a declaration of forfeiture. Moreover, the Crismores' unilateral actions of discharging their agent and recording a deed of conveyance do not warrant a finding that the Calvettis elected to forfeit. The option to forfeit the contract was vested with the Calvettis, not the Crismores. (See *Ruddock v. American Medical Association* (1953), 415 Ill. 63, 112 N.E.2d 107.) Mr. Crismore's own affidavit does not state sufficient evidence to support the showing of a clear intent by the Calvettis to forfeit the contract. His affidavit speaks only of a conversation regarding the Crismores' inability to continue making payments; it does not state that the Calvettis informed him that they were forfeiting the contract.

Although it is true that in situations where rental property is involved, a reentering to collect rent is a retaking of the property to a certain extent, paragraph 15 limits the Calvettis solely to the collection of rents. No authority was given to the Calvettis for such things as ejecting nonpaying tenants, inspecting apartments, performing maintenance, etc. Moreover, under paragraph 15 the Calvettis are required to apply rental payments to the contract balance. It is not unforeseeable that the rental receipts for any one given month could exceed the contract installment payment. Thus, any excess money received would have to be turned over to the Crismores. The cases cited by the parties as authority for the respective positions are not analogous because the trial court appears to not have based its ruling on the sole basis of the Calvettis' action of reentering to collect rent. We construe the trial court order dated August 6, 1987, as espousing a rule of law that a contract seller elects to forfeit a contract whenever he seizes rents regardless of any provision of the contract notwithstanding. We do not consider the sellers' seizure of rents as an election of forfeiture in this particular instance. Paragraph 3, dealing

with the forfeiture upon default, distinctly allows the sellers to reenter and take possession, whereas paragraph 15 simply allows the sellers to reenter to collect rent. Contrary to the Crismores' assertion, we do not consider these phrases as having the same practical effect. Construing the two phrases as indistinguishable would, in effect, nullify paragraph 15 because once the agreement is forfeited, there would no longer be a contract balance owing upon which a seizure of rents could be applied. The intent of the parties at the time of formation must have been to give meaning to all provisions of the agreement.

■ Generally, the parties are bound by the agreement that they entered into.

> "The object of judicial construction of a written instrument is to ascertain the true intent of the parties and to carry it out, if it does not conflict with any rule of law or good morals or the declared public policy of the State. [Citation.] It is not the function of a court to modify a contract or create terms new or different from those to which the parties have agreed." *Olson v. Rossetter* (1948), 399 Ill. 232, 238, 77 N.E.2d 652, 655.

In this case the Crismores agreed, in the event of default, to allow the Calvettis to reenter and collect rent and apply same to the amount due under the contract. We are aware of no rule of law or public policy of this State that conflicts with such a provision.

■ Therefore, the decisions of the trial court granting defendants' motion to dismiss and denying plaintiffs' motion to reconsider are reversed and the cause is remanded for further hearing.

Reversed and remanded.

STOUDER, P.J., and HEIPLE, J., concur.