ROCK ISLAND Y.W.C.A., Plaintiff-Appellee, *v.* STANLEY BESTOR *et al.*, Defendants-Appellants.

Third District   No. 75-242

Opinion filed May 19, 1977.

762

BARRY, J., dissenting.

N. L. McGehee, of McGehee, Boling & Whitmire, Ltd., of Silvis, for appellants.

John A. Bell, of Schoede, Bell, Scott & Panousis, of Rock Island, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Rock Island Y.W.C.A., instituted this action in the circuit court of Rock Island County to recover from defendants, Stanley Bestor and Robert Bestor, the unpaid consideration of an option executed between the parties and in favor of defendants. The circuit court entered judgment in favor of plaintiff for $1,000 and defendants appealed.

On October 2, 1974, the defendants offered plaintiff $1,000 as consideration for a 10-day option to purchase from plaintiff about 17 acres of real estate located in Rock Island County, fronting on the Mississippi River. The acreage is developed with a variety of buildings, a swimming pool and docks. In earlier years it had been a Y.W.C.A. girls camp known as Camp Archie Allen. At 9:30 a.m. on October 3, 1974, plaintiff accepted the option offer.

According to the relevant terms of the option agreement, the defendants were to have the exclusive option to purchase the described premises, along with certain designated personal property, for $100,000.

Upon the exercise of the option, the plaintiff was to provide defendants with merchantable title to the property. It was also agreed that if the option were exercised, the $1,000 option price would be applied to the purchase price at the time of closing. Certain other provisions provided for assignability, proration of taxes, and brokers fees. If defendant failed to exercise the option, the plaintiff would retain all sums paid by defendant as consideration for the 10-day option.

At approximately 1 p.m. on October 3, 1974, several hours after the option had been signed and well before the expiration of the option period, defendants inquired of plaintiff whether the option had been executed and upon being informed of the Y's acceptance, requested cancellation. This request to cancel or rescind the option was precipitated by defendants learning that the property was subject to what is commonly known as a floodplain easement in favor of the United States Government. The plaintiff refused to cancel, having turned down an offer to purchase in the interim because of the signed agreement and withheld the real estate from the market until the expiration of the option period. No money was ever paid by defendants and suit was brought by plaintiff on their promise to pay.

The site of the real estate is upstream from a navigational dam known as Lock & Dam Number 14. In connection with the construction of the dam, the United States had obtained the "perpetual right to clear out and remove all brush, timber, and other natural and artificial obstructions" and the "full, complete and perpetual right, power and privilege to overflow" plaintiff's 17 acres. Defendants contend that the floodplain easement created by this language constitutes an encumbrance upon the land which renders the title unmerchantable and because it is impossible for plaintiff to provide merchantable title upon exercise of the option, as is specified by the terms in the contract, they are not obligated to pay the consideration of $1,000. It appears that defendant also presented this same issue to the trial court, but the court refused to consider it and ruled in plaintiff's favor.

Plaintiff argues that the option is a simple unambiguous contract, entered into for valid consideration, a contract which has been fully performed by plaintiff while defendant has failed to perform his obligation to pay $1,000. Plaintiff also suggests that payment of the $1,000, by the express terms of the option, is not preconditioned upon plaintiff providing evidence of merchantable title, but to the contrary, merchantable title was not to be provided until after the option had been exercised. Hence, in essence, plaintiff argues that since the option was never exercised, the duty to provide merchantable title never arose and defendant cannot seek to avoid or rescind the option contract because of an encumbrance which allegedly renders the title not merchantable. On

appeal, we must determine whether the defense of impossibility of conveying merchantable title raised by defendants constitutes a legitimate defense which should have been considered by the trial court. The trial court held the defense improper and hence made no determination of whether plaintiff could or could not convey merchantable title.

■■ The option contract entered by the parties does not constitute a contract for plaintiff to sell and defendants to buy Camp Archie Allen. Rather, the option constituted a separate contract, entered into for valid consideration, which would mature or ripen into a binding real estate contract only upon exercise of the option. It is, in essence, a contract to make a contract. However, to say that the option agreement is a contract separate from the real estate sales agreement does not mean they are not interdependent. The option contract not only contained the terms providing for the length of the time seller would withhold the property from the market and the consideration which would be paid for the exclusive privilege of having the option to buy during that period, but also provided the essential terms for the real estate contract itself. Indeed, it is fundamental that such essential terms be included in an option, for without these terms, no binding obligation to sell and buy would arise upon exercise of the option. The real estate sales contract would be unenforceable and the purpose of the option contract fail. Hence, it should be readily apparent that the option agreement and the real estate sales contract are mutually related to one another. Such a mutual relationship is also supported in the present case by the fact that the option price was to be applied to the purchase price upon exercise of the option. In the event that the subject matter of the option contract, to wit the transfer of real estate, is impossible to perform according to the terms of the option, then the option must also fail.

We realize that in an ordinary real estate transaction, the time of furnishing merchantable title is after performance is undertaken by the buyer. But we believe that an encumbrance which could render the title unmerchantable is placed in a different category when the buyer also asserts and proves impossibility of performance existing at the time the contract was entered into. (See Annot., 84 A.L.R.2d 12 (1962).) Where impossibility of performance is asserted, any further conduct on part of prospective buyer would be excused. If the buyer need not tender performance, then it would seem that further performance under a related option agreement is likewise unnecessary, particularly where the object of the option contract is the sale of real estate. (See *Christopher v. West*, 409 Ill. 131, 98 N.E.2d 722.) The floodplain easement is not the usual encumbrance in the ordinary sense because of the nature of the problems it presents. If the easement renders title unmerchantable and the defect

cannot be cured, then the easement will constitute a valid defense to the option contract.

■■ In the present case, had the defendant paid for and exercised the option and plaintiff failed to deliver merchantable title, the defendant would be entitled to a refund of the option price and perhaps damages as well. To hold defendants liable for the option price would mean that the only way defendant could avoid liability would be by doing the useless task of exercising an option which defendant knew plaintiff could not perform and then suing upon plaintiff's failure to perform. It would be simpler merely to cancel or rescind the option in the first place. It is one of the oldest and perhaps the wisest maxims of equity that the law will not require a person to do a useless act. (*Moehling v. Pierce*, 3 Ill. 2d 418, 121 N.E.2d 735.) Yet, it is just such a useless act that would be required under plaintiff's contentions and theories for defendants to avoid liability.

■■ One should also consider what possible adverse consequences would enure to defendants in the event they were required to avoid liability on the option price only by first exercising the option and then suing or defending on the basis of the plaintiff's unmerchantable title. Defendants became aware of the floodplain easement at or near the time of plaintiff's acceptance of the option. By proceeding to exercise their option after learning of the easement, defendants would risk waiving all objections to the floodplain easement. As a general rule, a purchaser of real estate who enters a contract to buy real estate with actual knowledge of certain restrictive easements or encumbrances waives any objection as to those encumbrances. (25 Am. Jr. 2d Easements & Licenses §97 (1966).) Faced with such an alternative, defendants only choice was to proceed as they did, rescinding the contract immediately upon learning of the easement. We should note that defendants might also be in violation of their contractual duty to mitigate damages if they had exercised the option while knowing plaintiff could not perform, and then sought recovery of any damages sustained by plaintiff's failure to deliver merchantable title.

■■ What we have said thus far does not resolve the pivotal issue in this case, namely whether the floodplain easement render plaintiff's title unmerchantable. No evidence was presented at trial on this issue since the trial judge thought it was irrelevant to plaintiff's suit. We believe the court erred in failing to consider the impossibility of delivering merchantable title as a defense. However, since no evidence was presented, we must remand the case for a determination of whether the existence of the floodplain easement in favor of the United States renders the title to Camp Archie Allen unmerchantable and if so, then whether such a title defect could be cured. If defendants can prove unmerchantability and inability to cure, then they have established a valid defense.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed and the cause is remanded with directions.

Judgment reversed and remanded with directions.

ALLOY, P. J., concurs.

Mr. JUSTICE BARRY, dissenting:
I respectfully dissent from the majority opinion.

Of particular significance in this case is the fact that the agreement, entitled "Option Agreement," was written by the defendants-buyers' attorney and that paragraph 8 provided, "*Upon the exercise of the option,* Seller [plaintiff] shall provide Buyer [defendants] with a merchantable Abstract showing merchantable title in Seller [plaintiff], subject only to the taxes for the year 1974." (Emphasis added.) The evidence produced at trial indicated that defendants did not exercise the option to buy within the 10-day period. The defendants claim that they did not become aware of the standard Federal governmental overflow easement along this navigable waterway until after. they accepted the option.

Regardless of the defendants' contentions, the intention of the parties, as expressed in the writing memorializes their agreement, and is controlling in this case. The language is unambiguous. (*John Gabel Manufacturing Co. v. Murphy* (1945), 390 Ill. 455, 62 N.E.2d 401.) Under no stretch of the imagination can the option agreement entered into be read so as to instead constitute a binding contract for plaintiff to sell and defendants to buy Camp Archie Allen. To the contrary the plain and ordinary meaning of the language used establishes that the agreement was clearly an option to be exercised prior to the contract to buy and sell real property. The generally accepted definition of an option to purchase real property is that "it is a contract by which the owner of the property agrees with another person that the latter shall have the right to buy the property at a fixed price within a specified or reasonable time and upon agreed terms." 91 C.J.S. *Vendor and Purchaser* §4 (1955).

The option contract in the instant case consists of two separate parts. First the plaintiff for valuable consideration agreed to withhold the property from the market, and to leave open the offer to sell to defendants upon the stated terms for a 10-day period, which in itself did meet all the legal requirements of a binding contract. Secondly, it only contemplated the triggering of the later formation of a separate contract to buy and to sell the land if the condition precedent of exercising the option was met. The case of *Christopher v. West* (1951), 409 Ill. 131, 98

N.E.2d 722, cited by the defendants is distinguishable. That case involved an actual buy and sell agreement, not an option. In such a case the buyer is entitled to rescind the contract because the title is not merchantable or because the defect in title resulted in an impossibility on the part of the seller to perform. Obviously, here, the parties had not yet reached the stage of a binding contract to buy and to sell, and the merchantability of the title is not yet an issue.

"It is admittedly a proposition of law that an option contract does not become a contract for the sale of property until the holder of the option has exercised the same in strict conformity with the conditions therein presented." (*Moehling v. Pierce* (1954), 3 Ill. 2d 418, 423, 131 N.E.2d 735, 735.) In the instant case it should be here again emphasized that defendants' scriviner wrote "*upon* the exercise of the option, Seller shall provide Buyer with a merchantable Abstract * * *." (Emphasis added.) No citations are necessary for the fundamental principal of contract law that a writing will be construed most strictly against the party drafting it. For the purposes here involved, the plaintiff has performed all of its part of the bargain. It left the offer to sell open for the 10-day period and in fact took the property off of the market to its detriment during the life of the option. For this the defendants agreed to pay $1,000. Paragraph 8 of the option agreement demanding an abstract showing merchantable title only became operative if defendants exercised their option. Although an option such as the one here can ripen into a binding contract to buy and to sell, it did not do so.

No cases have been cited nor am I aware of any authority for requiring the optionor to furnish a marketable title to the optionee prior to the exercise of the option. In fact it is not unusual for a seller to not own land which he agrees to convey and yet the seller has every right to enforce the contract against the purchaser. (See *Ruddock v. American Medical Association* (1953), 415 Ill. 63, 112 N.E.2d 107, and *Heller v. McGuin* (1914), 261 Ill. 588, 104 N.E. 158.) By the generally accepted definition of option and by the lack of express language of this contract the plaintiff was not required to go through the expense of furnishing evidence of merchantable title until the inception of the contract to buy and sell. Only when the option is accepted and an election thereunder is made does the option become an executory contract for the sale of the property. While the majority characterizes the exercising of the option as a "useless act," I characterize it as an essential act. The absence of prior case precedent itself suggests that the need to prove a merchantable title without an express agreement in an option contract should not be the rule.

Without considering that a defect, if any, might be cured (by release or otherwise) after exercise of the option, the majority proceeds to assume

the lack of merchantability of title, adversely to the plaintiff, in order to create the issue of impossibility of performance. Though defendants raise the issue of whether the easement in the case at bar is such an encumbrance that plaintiff's title is not merchantable, I believe a determination of the nature and obligations of the option contract resolve the appeal, and that a remand is not necessary. Of significance is the fact that the plaintiff received another offer from a willing buyer during the life of defendants' option (despite the majority's reliance on lack of merchantability), and could not accept the offer because of the existence of the option. Further, from the agreed statement of facts, it also appears that after the expiration of the option agreement, the plaintiff did in fact enter into a contract for the sale of the subject premises for the same price offered by the defendants.

If the majority view is correct, then the optionee in circumstances such as in the present case can test merchantability, contrary to the express language in the option to purchase, prior to the formation of the executory land sale contract, and thereby effectively beat down the seller in price or for other favorable contract terms. I do not believe that to have been the intent of the parties, nor should it be the direction of the law.

I find the majority's reliance on a theory of estoppel and waiver of the alleged defect speculative and without merit. I believe it should be noted that the defendants could have easily conditioned their exercising of the option upon the reservation of their objection to the easement, and in fact the uncontroverted and admitted evidence of the attempted recission because of the easement is probative of their reserving their objection to the title.

The trial court correctly found in favor of plaintiff and against defendants, and entered judgment for $1,000 plus costs. I would affirm.