TONY L. BIGGS, Plaintiff-Appellee, *v.* HEALTH AND HOSPITALS GOVERNING COMMISSION OF COOK COUNTY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 76-1237

Opinion filed December 1, 1977.

William P. Tuggle, Joan M. Pucillo, Robert C. Samko, and Gail D. Hasbrouck, all of Health & Hospitals Governing Commission, of Chicago, for appellants.

James D. Biggs, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a summary judgment entered in favor of Tony L. Biggs (hereinafter called "the plaintiff") by the circuit court of Cook County. The summary judgment ordered a preliminary injunction previously entered be made permanent, and granted the plaintiff back pay because of the improper termination of his employment.

The issues presented for review are whether relief in equity (injunction) may be granted in a case where a remedy may be had at law (mandamus), and whether the plaintiff is guilty of laches.

The plaintiff was employed as an X-ray Supply Clerk II at Cook County Hospital in 1968. The Cook County Hospital is under the jurisdiction of the Health and Hospitals Governing Commission of Cook County (hereinafter called "the Commission"). The plaintiff was granted career status within the Commission's merit system.

As a career employee he could not be discharged, demoted, or suspended for a period of more than 30 days, except for cause and upon written charges (Ill. Rev. Stat. 1973, ch. 34, par. 5026).

On February 15, 1972, the Commission adopted a resolution establishing a compulsory retirement program for all of its employees. On January 19, 1973, the plaintiff was retired from his employment. The termination was effected pursuant to the resolution, without cause and without a hearing.

On August 15, 1974, the Illinois appellate court in *Sibley v. Health & Hospitals' Governing Com.* (1st Dist. 1974), 22 Ill. App. 3d 632, 317 N.E.2d 642, held the compulsory retirement resolution was invalid and removals were without lawful authority.

On September 18, 1974, the result of the appellate court action was published in a Chicago Tribune newspaper article. On September 23, 1974, the plaintiff presented himself with a copy of the newspaper article to the personnel department of the Cook County Hospital and requested reinstatement with back pay. The plaintiff was advised he would not be rehired.

On November 1, 1974, the plaintiff filed a class action complaint for injunctive relief. This complaint was stricken by the court and on June 2, 1975, an amended complaint was filed.

On November 8, 1975, the plaintiff filed a motion for a preliminary injunction reinstating him to his position of employment. The motion was granted on that day.

On April 8, 1976, a motion for summary judgment, together with an affidavit of the plaintiff in support of the motion, was filed with the court.

On June 17, 1976, the court entered an order granting plaintiff's motion for summary judgment, and ordered the preliminary injunction previously entered be made permanent and the plaintiff be granted back pay from January 19, 1973 to November 12, 1974. From this order the defendants appeal.

The defendants argue the plaintiff's remedy in this matter was limited to his remedy at law, mandamus, and the remedy of injunction was erroneously allowed. This conclusion is the result of applying the equitable rule that "equity will not assume jurisdiction to grant relief where an adequate remedy at law exists." *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105, 306 N.E.2d 299, 301.

■■ It must be recognized, however, that the Judicial Article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our State's circuit courts have "original jurisdiction of all justiciable matters." (Ill. Const. 1970, art. VI, §9.) Consequently, our analysis is directed toward the apparent incongruity between the Illinois Constitution and the decisions of the Illinois Supreme Court.

In discussing the development of the law regarding the distinction between law and equity it may prove helpful to examine the origin of said distinction, as well as the applicable Federal and sister State approaches to the problem.

Immediately after the Norman conquest common law and equity were one system in the effort of the Anglo-Norman kings to carry out their duty to preserve law and administer justice. By the middle of the 14th century, cases in which the king's regular tribunals were unable to function effectively began to be referred to the chancellor. Ultimately, this became the routine procedure and the Chancery had come to be recognized as a separate judicial tribunal or court.

Originally the king and then the chancellor had no rules and principles to guide them in reaching a decision upon petitions for justice. Inevitably, as the centuries passed and the petitions became more and more numerous, the chancellor began to follow the precedents established by himself or preceding chancellors. The development of equity from a system of natural justice to a system of law came in the 18th and early 19th centuries. This development of a body of law went on without challenge from the courts of common law.

Until 1813 there were only two judges in the Court of Chancery. There was the Lord Chancellor and the Master of the Rolls, and it was by degrees that the latter had become an independent judge. For a long time the Master of the Rolls was merely the Chancellor's assistant. See generally, W. Jones, The Elizabethan Court of Chancery (1967).

A major change came with the Judicature Acts of 1873 and 1875. These

Acts abolished the old separate Courts of Queen's Bench, Exchequer, Common Pleas, Chancery, Probate, the Divorce Court, and the Court of Admiralty; and created the Supreme Court of Judicature with a High Court divided into divisions known as the Queen's Bench Division, Chancery Division, and the Probate, Divorce and Admiralty Division. The latter was renamed the Family Division in 1970. Each division exercises both legal and equitable jurisdiction (Judicature Act 1873 §24; Judicature Act 1925 §§36-44; *In re Hastings* (1959), 1 Q.B. 358; *In re Hastings* (1959), 1 W.L.R. 807). For the sake of administrative convenience, cases are allocated to the divisions according to their general subject matter.

Equity in the courts of the United States has undergone similar change. The Constitution of the United States, as adopted in 1789, differentiated between law and equity. Thus, the judiciary article (art. III, §2) spoke of "all cases, in law and equity."

The Congress did not, as no doubt it might have done, create separate national courts of equity and law, but organized only one system of courts in which might be tried cases at law and cases in equity. The same judge happened to be playing the role of common law judge or of chancellor. But the declaration at law, and the bill in equity retained their distinct names and characteristics, and the case had to be one in law or in equity.

In 1938 the traditional characteristics of equity in the United States courts underwent two basic changes, caused by the Federal Rules of Civil Procedure and the United States Supreme Court decision in *Erie R.R. Co. v. Tompkins* (1938), 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817.

The Supreme Court, by Federal Rules of Civil Procedure, abolished the distinctions between actions at law and suits in equity and fused their administration to one procedural system. (28 U.S.C. Rule 2; 2 Moore's Federal Practice §§2.01—2.10 (2d ed. 1948).) This was in line with the Judicature Acts and rules of the court in England and the practice acts of the majority of States. Thus, the statutory adequacy test, enacted in 1789, that "suits in equity shall not be sustained in any court of the United States, in any case where a plain, adequate and complete remedy may be had at law" (28 U.S.C. §384 (1940)) became obsolete and superseded by Rules 1 and 2 in 1938, and was repealed by the Revised Judicial Code of 1948. 2 Moore's Federal Practice §2.01[2] (2d ed. 1948, 1976-77 supp.).

The Supreme Court, in *Erie v. Tompkins*, required the Federal courts, in cases where jurisdiction depended upon the diversity of citizenship of the parties, to apply the law annunciated by the courts of the State. This resulted in a decentralization of equity in the Federal courts as applied to nonfederal questions.

By constitution in New York in 1846 the Court of Chancery was abolished, and there was created in its place a court of general jurisdiction

in law and equity. In addition the next legislature provided for three commissioners to revise practice and pleadings of courts. The following year the legislature directed the commissioners to provide for the abolition of the present forms of actions and pleadings in cases at common law; for a uniform course of proceeding in all cases whether of legal or equitable cognizance. On April 12, 1848, the commissioners' code, with some amendments, passed and became effective in July. The code was in large measure the work of David Dudley Field, one of the commissioners, and is generally referred to as the Field Code. It has served as the model of the succeeding codes in this country.

The most important characteristics of the Field Code were the one form of action and the system of pleading the facts. The forms of action were abolished, the separation of law and equity was done away with, and in its place the codifiers planned a blended system of law and equity, with only a single form of action to be known as a civil action.

The Illinois Civil Practice Act specifies the form of actions to be filed in the circuit court. Paraphrasing the Field Code (1848, part II, title I, §62), the section entitled "Forms of Action" provides, in pertinent part:

> "Neither the names heretofore used to distinguish the different ordinary actions at law nor any formal requisites heretofore appertaining to the manner of pleading in those actions, respectively, are necessary or appropriate, and there shall be no distinctions respecting the manner of pleading between actions at law and suits in equity * * *." Ill. Rev. Stat. 1973, ch. 110, par. 31.

Although the judicial article of the Illinois Constitution was adopted, granting the circuit court original jurisdiction of all justiciable matters, and even though the Civil Practice Act abolished the distinctions respecting the manner of pleading between actions at law and suits in equity, the Illinois Supreme Court has repeatedly applied the rule prohibiting equitable relief whenever there existed an adequate remedy at law (see *North Pier Terminal Co. v. Tully* (1976), 62 Ill. 2d 540, 343 N.E.2d 507; *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299). In each of these cases the court held, in the field of taxation the general rule applies that equity will not assume jurisdiction to grant relief where an adequate remedy at law exists. We have difficulty with the rationale of these opinions.

In general, the adequacy of a remedy at law is a stock defense and if the contention is sustained, the plaintiff is dismissed from a court of competent jurisdiction without any adjudication on the merits, often when it would be too late for him to start over with a suit at law.

■■■ We think it better to recognize the general jurisdiction of the circuit court as well as the wide discretion of the courts in regard to

granting or refusing injunctions. The court should take into consideration the comparative injury the parties will sustain. Where the issuance of an injunction will cause great harm to the defendant and will confer little benefit in comparison on the plaintiff, an injunction may be refused (see *Nitterauer v. Pulley* (1948), 401 Ill. 494, 82 N.E.2d 643; *Housing Authority v. Church of God* (1948), 401 Ill. 100, 81 N.E.2d 500). Moreover, the granting of an injunction should be exercised cautiously when important public interests are involved. Although difficult to apply to all cases, ordinarily when the granting of an injunction may cause serious public loss, without a corresponding great advantage to the plaintiff, an injunction will not be granted (see *Odd Fellows Oakridge Cemetery Association v. Oakridge Cemetery Corp.* (1957), 14 Ill. App. 2d 378, 144 N.E.2d 853). In applying these rules to the field of property taxation the court would consider, if the injunction were to be granted, the "[s]erious impairment of the collection of taxes could result, and the operation of governmental units could be seriously affected." (*Clarendon Associates*, 56 Ill. 2d 101, 108.) Comparatively, if the injunction is refused the inconvenience to the taxpayer would be that he would be forced to pay under protest before litigating his rights. This remedy is his alternative remedy as opposed to being a legal remedy which removes a plaintiff in equity from the jurisdiction of the court.

As this court has held:

> "* * * [T]he Judicial Article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our State's circuit courts have 'original jurisdiction of all justiciable matters.' (Ill. Const. 1970, art. VI, sec. 9.) The purpose of section 9 was to create a single integrated trial court structure (Ill. Ann. Stat., Ill. Const., art. VI, sec. 9, Constitutional Commentary (Smith-Hurd 1971)), thereby vesting the circuit courts with jurisdiction to adjudicate all controversies. Consequently, so long as a case presents a justiciable matter, the circuit court has jurisdiction and the presence or absence of an adequate remedy at law is an irrelevant consideration. [Citation]; see also Fins, *Re-Examination of 'Jurisdiction' in Light of New Illinois Judicial Article* (1951), 53 Ill. Bar. J. 8, 11-12 (1964)." *Lopin v. Cullerton* (1977), 46 Ill. App. 3d 378, 380.

■■ As to the instant case, since the request for injunctive relief presented a justiciable matter the circuit court had jurisdiction and properly granted the injunction.

In the final analysis the circuit court must look to the substance rather than the form of a complaint in order to come to a just result.

■■ The defendants also argue the plaintiff should have been barred by laches from prosecuting this action in the circuit court. Defendants

contend the complaint failed to set forth any facts excusing the 22-month delay in bringing this action and the plaintiff is guilty of laches. This argument is without merit. The mere passage of time does not bar relief where a reasonable excuse for the delay is apparent in the complaint. (*Nelson v. Wilson* (1928), 331 Ill. 11, 15.) A delay of 22 months by a discharged employee in bringing an injunction action for reinstatement and accrued back pay, which is caused by awaiting disposition of a prior suit involving employees discharged under the same policy, is reasonable and does not constitute laches. The complaint discloses the plaintiff filed his action on November 1, 1974, less than three months after the appellate court rendered its decision in *Sibley v. Health & Hospitals' Governing Com.* (1974), 22 Ill. App. 3d 632. From the facts of record, which include a history of the *Sibley* litigation, it is a reasonable and logical inference the plaintiff at bar was awaiting the outcome of prior litigation. Therefore, the action for injunctive relief was sufficiently explained, as to why there had not been an earlier institution of the action.

■■ In addition, defendants fail to recognize that laches is not simply a matter of time; rather, it is a principle of "inequity founded upon some change in the condition or relation of the property and the parties" (*Holland v. Richards* (1955), 4 Ill. 2d 570, 578). That is, it must appear the plaintiff's unreasonable delay in asserting his rights has prejudiced and misled the defendant, or caused him to pursue a course different from what he would have otherwise taken. (*People ex rel. Griffin v. City of Chicago* (1943), 382 Ill. 500, 504.) If the defendant is not injured by the delay, then the plaintiff is not guilty of laches.

It was incumbent upon the defendant to come forward, and demonstrate the plaintiff's delay had otherwise prejudiced the defendant or induced the defendant to change position. Under the circumstances, we believe the defendant failed to do so. See generally *People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.