LA SALLE NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* TRIUMVERA HOMEOWNERS ASSOCIATION, Defendant-Appellee.— (Triumvera Homeowners Association, Plaintiff-Appellee, *v.* Joseph Zekas, Indiv. and d/b/a SRA-Triumvera, *et al.*, Defendants-Appellants.)

First District (4th Division)   No. 82—1253

Opinion filed September 30, 1982.

LINN, J., dissenting.

William G. Schopf, Jr., Daniel A. Edelman, Steven A. Weiss, and Crystal L. Pruess, all of Reuben & Proctor, of Chicago, for appellants.

Marshall N. Dickler and Catherine Valenti, both of Miller and Dickler, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This is an interlocutory appeal from an order denying preliminary injunctive relief to the plaintiffs, La Salle National Bank as trustee, Joseph P. Zekas and TA Corporation as general partners of SRA-Triumvera, an Illinois Limited Partnership (SRA), and granting a cross-motion for preliminary injunctive relief to the defendant, Triumvera Homeowners Association (Homeowners).

The action arose out of a dispute between SRA and the Homeowners which developed when SRA attempted to rent rather than sell 80 vacant units in the Triumvera condominium complex. In April 1982, SRA took over the Triumvera sales offices and model apartments; changed the promotional signs located about the complex from advertising "sales" to advertising "rentals"; and informed the Homeowners that they intended to take prospective renters on tours of the common areas, recreational building, swimming pool and tennis courts. SRA also represented to their prospective tenants and tenants that they would be allowed to use and enjoy the common areas and community facilities at Triumvera.

According to the testimony of Joseph Zekas, the general partner of SRA, the following events took place in response to SRA's actions. On April 5, the Homeowners' attorney phoned him and demanded

that SRA remove the signs in the common areas. This phone call was followed by a letter from the attorney advising Zekas that the signs were in violation of the association rules. Then on April 19, Zekas said that he received a phone call from his rental agent at Triumvera advising him that the association had posted a notice in the community center and had informed her that prospective tenants and actual tenants would be denied access to the recreational facilities. On April 21, Zekas testified that he met with the Homeowners and was told that SRA, their agents, prospective tenants and tenants would be barred from access to the recreational facilities. Zekas said that he then talked to the Homeowners' attorney on April 22 and was advised that the Homeowners' policy in regard to SRA's activities remained unchanged. Zekas testified that he then tried to phone the president of the association, but when he was unable to reach him, phoned the association's treasurer and convinced him to arrange another meeting. According to Zekas, a second meeting was then held in which nothing was resolved in his favor. Zekas then testified that on April 23, he received another phone call from his rental agent at Triumvera informing him that the Homeowners had forcibly removed and confiscated the advertising banners from the common areas. Zekas claimed that he immediately verified this fact in a phone call to the resident manager of the complex. Then, that same afternoon, SRA filed the instant lawsuit.

SRA makes two claims in this appeal. First, SRA contends that it is entitled to use the common areas to advertise rentals and to maintain model apartments for rental purposes. For convenience we will refer to this as the claim to conduct rental activities. In response to this first claim, the Homeowners do not deny that if SRA is the owner of 80 units, it may rent them as any other owner can rent. However, the Homeowners contest SRA's right to use the common areas to conduct rental activities.

SRA's second claim is that it is entitled to rent units which it owns with a guarantee to its tenants that they will be granted membership in the recreational facilities and that SRA's tenants and prospective tenants are entitled to access to the recreational facilities at the present time. The Homeowners respond that such membership and access is not automatic and proper application must be made for membership and access to these facilities. The Homeowners further contend that no factual record has yet been made on the issue of membership and access to the recreational facilities.

The trial court after hearing this matter for several days and considering the relevant documents enjoined SRA from conducting rental

activities in the Triumvera common areas but declined to order the Homeowners to grant access to the recreational facilities "at this time."

SRA's first contention that it is entitled to conduct rental activities by using the common areas to advertise rentals and to maintain model apartments for rental purposes is based on the fact that the original developer, referred in the documents as the developer/declarant, had such a right and that they are "successors/assignees" as defined under those documents and consequently have the same right. That claim is controlled by the governing documents of Triumvera. Section 2.07(a) and (f) of the "Declaration of Covenants, Conditions, Restrictions and Easements for Triumvera" (Master Declaration), which is the overall governing document for Triumvera, read as follows:

"2.07 DECLARANT'S RESERVED RIGHTS:

*** Declarant, and its agents and invitees shall have the following rights:

(a) The right to ingress and egress over, in, through and upon the Common Area and the right to use the Community Facilities, without the payment of any fees or charges which may be set by the Homeowners' Board, for the purpose of showing and otherwise promoting the Common Area and the Community Facilities to *prospective purchasers of Dwelling Units* constructed or to be constructed by Declarant on the Development Area;

(f) The right to place and maintain on the Premises model apartments, *sales offices*, advertising signs or banners, and lighting in connection therewith at such locations and in such forms as the Declarant may, in its discretion, determine." (Emphasis added.)

SRA's first claim is also based upon sections 2.07(a) and (b) of the "Declaration of Condominium Ownership and of Easements, Restrictions and Covenants For the Triumvera 701 Form Square Condominium Association" (Building Declaration) which is the governing document for the 701 Form Square building where the office and model units are located. These sections read:

"207 DECLARANT'S RIGHTS:

Anything herein to the contrary notwithstanding, the Declarant and its agents and invitees shall have the following rights:

(a) The right to place and maintain on the Property model apartments, *sales offices*, advertising signs or banners, and lighting in connection therewith, at such locations and in such

forms as the Declarant may, in its discretion, determine,

(b) The right of ingress and egress and transient parking in and through the Common elements for the purpose of showing and otherwise promoting any building in the Development Area to *prospective residents* of the planned development of Triumvera." (Emphasis added.)

SRA's second claim involving its right to present access to the recreational facilities and its right to rent 80 units with a guarantee to the tenants that they will be given membership in the recreational facilities because it is the owner of 80 units as the assignee/successor of the Developer/Declarant is based on sections 2.04 and 2.05 of the Master Declaration. These sections read:

"204 RIGHT OF ENJOYMENT:

Every Owner shall have the perpetual right and easement to use and enjoy the Common Area and Community Facilities, which right and easement shall include but not be limited to easements for operation and parking of vehicles, pedestrian ingress and egress, and use and enjoyment of open spaces and Community Facilities. Such right and easement shall be appurtenant to and shall pass with the title to every Dwelling Unit, subject to and governed by the provisions of this Declaration, of the By-Laws and of the rules and regulations of the Homeowners' Board.

2.05 DELEGATION OF USE:

Subject to this Declaration, the By-Laws, and the reasonable rules and regulations of the Homeowners' Board, any *Owner may delegate his right to use and enjoy the Common Area and Community Facilities to persons in his Family or to his tenants or contract purchasers who reside in his Dwelling Unit.*" (Emphasis added.)

The Homeowners contend that they have standing to dispute SRA's claim as the not-for-profit corporation established under Article Four of the Master Declaration, which designates the Homeowners as the "governing body for all the Owners for the administration and operation of the Common Area and Community Facilities." The Homeowners claim further rights to control the common area and community facilities under section 2.06 of the Master Declaration, which empowers the Board of the Homeowners to use, maintain, lease, grant licenses or concessions and to charge fees to gain access to the common areas and community facilities. SRA concedes that the Homeowners have control over the common areas used by residents of "all Triumvera buildings" but challenges its standing to complain

of SRA's use of the office and model apartments for rentals.

In response to SRA's first claim that it is entitled to conduct rental activities at Triumvera, the Homeowners initially challenge SRA's status as the Declarant/Developer but argue that even if SRA is eventually proved to be the Declarant/Developer, sections 2.07(a) and (f) only grant the Declarant the right to conduct sales activities at Triumvera and not rentals. Specifically, the Homeowners cite the language in 2.07(a) which speaks of "showing" and promoting the common area and the community facilities to "prospective purchasers of Dwelling Units" and specific language in section 2.07(f) which speaks of "the right to maintain model apartments, sales offices, advertising signs or banners, and lighting in connection therewith." The Homeowners further claim that section 2.07(b) of the Building Declaration, which grants the Declarant the right to show "prospective residents" around the complex, must be read in conjunction with section 2.07(a), which speaks specifically of sales activities. The Homeowners argue that because there is no specific language in either the Master Declaration or the Building Declaration which reserves the right to conduct such rental activities to the Declarant, such activities necessarily fall under the proscription against such rental activities which appears in section 3.04 of the Master Declaration. Section 3.04 states:

> "3.04 COMMON AREA RESTRICTION:
>
> Except as permitted under Section 2.06 and 2.07, no industry, business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the Premises and no "For Sale" or "For Rent" signs or any window display advertising be maintained or permitted on any part thereof."

In response to SRA's second claim that SRA is entitled to rent units which it owns with a guarantee to its tenants and prospective tenants that they will be granted membership in the recreational facilities, the Homeowners do not dispute SRA's right to rent if SRA is ultimately proved to hold title to 80 Dwelling Units but argue that any right to use and enjoy the common area and community facilities are "subject to *** the reasonable rules and regulation of the Homeowners' Board." This qualification of rights appears in sections 2.04 and 2.05 of the Master Declaration under which SRA claims such rights of membership for its tenants and access for prospective tenants. The Homeowners state that under their existing rules and regulations, before an owner can gain access to the use of the recreational facilities, he must first prove that he is an owner and follow established procedures for applying for membership. The Homeowners

claim that SRA tenants have neither proven such ownership through SRA's title to these units nor have they yet applied for membership according to the procedures established by the Homeowners' Board. SRA concedes that this is true but contends in its reply brief "that the Homeowners Association made it clear that no such application would be granted."

The major issues on appeal are whether the trial court abused its discretion when it enjoined the plaintiffs from engaging in rental activities at Triumvera and when it declined to order the Homeowners to grant access to SRA's tenants and prospective tenants to the recreactional facilities at the time of the order. An additional issue on appeal is whether or not the trial court deprived the plaintiffs of a fair preliminary injunction hearing by disqualifying their counsel one day before that hearing. Because this issue is based on a separate set of facts, it will be considered at the end of this opinion.

The function of the trial court in considering a motion for a preliminary injunction is to grant the injunction if it finds (1) that there is a certain and clearly ascertainable right that needs protection, (2) that the movant will suffer irreparable injury if the injunction is not granted, (3) there is no adequate remedy at law, and (4) the movant has a likelihood of success on the merits. These factors must be established by a preponderance of the evidence. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166.) The trial court has a great deal of discretion in granting or denying an injunction. A reviewing court will only reverse the trial court if it finds that the granting or denial of the preliminary injunction was against the manifest weight of the evidence. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.

■ To prevail in its action for a preliminary injunction, it was necessary for SRA to demonstrate a likelihood of success on the merits. (*Simpkins v. Maras* (1958), 17 Ill. App. 2d 238, 149 N.E.2d 430.) Although SRA was not required to make out a case which in all events would warrant relief at the final hearing, SRA needed to raise a fair question as to the existence of its right to its claim and lead the trial court to believe that it would probably be entitled to such relief if its proof should ultimately sustain its allegations. *Wessell Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.

Regardless of whether or not SRA is ultimately adjudicated to be the successor/assignee of the original developer, SRA had to convince the trial court of its likelihood of success on its claim that the original developer had the right to conduct such rental activities at Triumvera. Although to meet the requirement of likelihood of success on the mer-

its, SRA did not have to make out a case which in all events would warrant relief at the final hearing, SRA did have to raise a fair question of this right on the basis of the evidence which it presented. *Wessel Co. v. Busa* (1975), 28 Ill App. 3d 686, 329 N.E.2d 414.

The documentary evidence presented by SRA to the court consisted of the Master Declaration and the Building Declaration. SRA claims that a broad reading of sections 2.07(a) and (f) of the Master Declaration and section 2.07(b) of the Building Declaration raise this fair question of the Declarant's right to conduct such rental activities at Triumvera. SRA claims that a broad reading of these sections is necessitated by current economic conditions which force a condominium developer such as SRA to lease units until such time as economic conditions improve to permit the sale of such units at a reasonable price.

Our only task is to review these documents in order to make a determination as to whether or not there was adequate evidence before the court to support its decision that SRA had not raised a fair question of its likelihood of success on its claim. Although SRA argues that a broad reading of these sections is necessary, we believe that it was appropriate for the trial court to base its decision upon specific language used in the instruments presented to it. It is well established that a court must arrive at a meaning from the language used in the documents. Construction is a pure question of law and the court must determine this from the document's clear language. *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill. App. 3d 621, 275 N.E.2d 300.

An analysis of the relevant documents indicates that under sections 2.07(a) and (f) of the Master Declaration, the Declarant is granted the right to show and promote the common areas to "prospective purchasers of Dwelling Units" and the right to place and maintain on the premises model apartments, "sales offices," and advertising signs or banners. There is no specific language in the Master Declaration which grants the Declarant the right to conduct rental activities in the common area and the community facilities of Triumvera. In the absence of specific language granting the Declarant the right to use the common areas to advertise rentals and to maintain model apartments for rental purposes at Triumvera, section 304 of the Master Declaration cited to the court by the Homeowners specifically proscribes such activities. Section 304 clearly states:

> "No industry, business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the Premises and no *** 'for rent' signs or any window display

advertising be maintained or permitted on any part thereof."

SRA claims that the lack of specific rental language in the Master Declaration is not fatal to its right to conduct rental activities at Triumvera because this right is preserved in section 2.07(b) of the Building Declaration. Section 2.07(b) of the Building Declaration grants the Declarant the right to show "prospective residents" any "building" or "common elements." According to SRA, the use of the word "prospective residents" in the Building Declaration covers both prospective renters and prospective buyers. Thus, SRA does have the right to conduct rental activities.

However, we fail to see how the language in section 2.07(b) of the Building Declaration substantiates SRA's claim that the Declarant has the right to conduct rental activities. Section 2.07(b) is qualified by section 2.07(a) of the Building Declaration which speaks specifically of "sales offices." An instrument must be read and considered as a whole. (*Leavitt v. Kostel* (1961), 32 Ill. App. 2d 313, 177 N.E.2d 882; *In re Estate of Klinker* (1979), 80 Ill. App. 3d 28, 399 N.E.2d 299.) Therefore, we do not believe that section 2.07(b) of the Building Declaration mandates a broad reading of relevant sections of the Master Declaration to include rental activities.

■ In view of the above analysis of the documents presented to the trial court, it was not against the manifest weight of the evidence for the trial court to conclude at this stage of the case that SRA had failed to raise a fair question that the Declarant had the right to use the common areas to conduct rental activities. Thus, the trial court did not abuse its discretion when it refused to enjoin the Homeowners from interfering with such rental activities. Similarly, on the basis of the same evidence, we do not believe that the trial court was in error when it enjoined SRA from conducting such rental activities at Triumvera.

In addition, regardless of whether or not SRA is ultimately adjudicated to be the owner of 80 dwelling units as the successor/assignee of the Developer/Declarant, in order to qualify for injunctive relief on its second claim that its tenants should be guaranteed membership in the recreational facilities and that prospective tenants should be allowed access to these facilities, SRA first had to make some showing to the court that the Homeowners had in fact refused to grant these privileges to the tenants and prospective tenants. Sections 2.04 and 2.05 of the Master Declaration, which cover such privileges, clearly state that the right to use and enjoy the community facilities by Triumvera Dwelling Unit Owners and their delegatees is subject to the "By-laws and reasonable rules and regulations of the Homeown-

ers' Board." The Homeowners claim and SRA concedes that under the Homeowners' existing rules and regulations, before an owner can gain access to the use of the recreational facilities he must first prove that he is an owner and follow established procedures for applying for membership. The Homeowners further claim and SRA further concedes that SRA tenants have neither proven such ownership through SRA's title to these units, nor have they yet applied for membership according to the procedures established by the Homeowners' Board. In addition, although SRA claims that the Homeowners have barred SRA from taking prospective tenants on tours of the recreational facilities, the record is in fact void of any evidence that such a barring has taken place and only sparsely refers to any prospective barring of such tours.

■ The trial court had before it a matter of considerable personal and economic importance to the individual homeowners and a matter of considerable economic interest to SRA. The court considered the documents and ruled, and as we indicated earlier within its discretion, that SRA was not entitled to use the common areas for rental activities. That ruling bears on a more nebulous second issue, that is, the SRA's right to access to the recreational facilities. By barring SRA's use of the common areas for rental activities the court in fact eliminated a great deal of SRA's presence in the condominium complex. SRA has a right to rent the units it owns but under the same restrictions as any other unit owner. The court did not deny SRA's motion for an injunction on its request to access to the recreational facilities. It said that it would not grant access "at this time." A trial court exercising equitable powers should use those powers sparingly. It appears that the court was acting most prudently when it proceeded cautiously by ruling definitively on the first issue and rather tentatively on the second issue. The court could well believe that with the reduced presence of SRA on the premises the parties would be able to resolve the prospective problem of access to the recreational facilities amicably. The court is available as a constant monitor of the situation, and we do not believe that we should retry this matter at this level.

A final issue on appeal is SRA's claim that the trial court deprived it of a fair preliminary injunction hearing when the court disqualified SRA's counsel one day before that hearing. According to SRA, there was no basis for disqualifying Jenner & Block and this erroneous disqualification mandates reversal of the preliminary injunction granted to the Homeowners.

The issue arose when the Homeowners moved to disqualify the law firm of Jenner & Block from representing the plaintiffs. The

Homeowners claimed that during 1976, the firm had represented five Triumvera unit owners who were now members of the Homeowners Association. On April 23, 1982, the court ruled that there had to be a hearing on the disqualification issue before the motion for the preliminary injunction could be held. The hearing was held on April 27, 1982. At that hearing, a partner at Jenner & Block testified that he had briefly advised five unit owners at Triumvera about their rights as condominium owners. He specifically counselled them as to whether the First National Bank of Chicago would be responsible for operating the Triumvera recreational facilities and repairing certain construction defects after the bank assumed control of Triumvera in lieu of foreclosing on the original developer. Two letters introduced into evidence further confirmed this testimony. At the conclusion of the hearing, the court disqualified Jenner & Block on the grounds that it "did consult with an ad hoc committee or members of an ad hoc committee as to the rights of condominium and that is the very issue that is going to be tried in both these cases ***." The court gave the plaintiffs until 2 p.m. the next day to find substitute counsel.

■ The plaintiffs argue that there was no basis for disqualifying Jenner & Block because there is no principle of law prohibiting an attorney from suing a former client. In making this assertion, the plaintiffs apparently are overlooking Canon 4 of the Illinois Code of Professional Responsibility, which provides that "[a] lawyer should preserve the confidences and secrets of a client" and Canon 9, which also cautions that "[a] lawyer should avoid even the appearance of professional impropriety." The relevant test for disqualification of an attorney under these two canons is "where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." (*Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751, 754; *Government of India v. Cook Industries, Inc.* (2d Cir. 1978), 569 F.2d 737.) The rationale for such disqualification is to enforce the attorney's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751.

As proof of a substantial relationship, "the former client need show no more than the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client." See *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.* (S.D.N.Y. 1953), 113 F.

Supp. 265, 268, cited in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751, 754.

■ Applying this test to the instant cause, the trial court found that Jenner & Block had counselled five condominium owners as to their rights as owners at Triumvera vis-a-vis The First National Bank of Chicago. These five former clients now are involved in litigation with a claimed successor to First National Bank of Chicago over their rights as owners at Triumvera. We believe the similarity of clients and issues are not only "substantially related" but are in fact "identical." (See *Emle Industries, Inc. v. Patentex, Inc.* (2d Cir. 1973), 478 F.2d 562.) Therefore, we believe it was not an abuse of the trial court's discretion to disqualify Jenner & Block from the instant cause.

■ The plaintiffs further claim that disqualification of their counsel one day before the hearing on the preliminary injunction deprived them of a fair preliminary injunction hearing. The Homeowners respond that SRA has waived the issue of prejudice by specifically failing to object to the prejudice caused by the one day period at the time of the disqualification order. (*Castro v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 81 Ill. App. 3d 233, 401 N.E.2d 5; *Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347, 407 N.E.2d 1067.) We agree with the Homeowners that since no objection to the alleged prejudice was made in the trial court, this issue cannot be raised for the first time on appeal.

For the above reasons we affirm the decision of the trial court.

Affirmed.

ROMITI, J., concurs.

JUSTICE LINN, dissenting:

I respectfully dissent from the decision of my colleagues. My review of the record and all the pertinent documents has led me to the firm conclusion that the trial court abused its discretion not only when it denied SRA-Triumvera's request for a preliminary injunction but also when it granted the injunction in favor of the Homeowners' Association. Further, the majority's statement that SRA's critical burden was to convince the trial court of the original developer/declarant's right to conduct a unit leasing business at Triumvera focuses on an "issue" never specifically addressed by the trial court and therefore irrelevant to the instant appeal.

I have always believed that an analysis of potential abuse of discretion must begin with a clear understanding of the meaning and

scope of the trial judge's holding and the findings on which it is based. The inquiry then proceeds to an examination of the record to see whether those precise findings and holdings are supported by the manifest weight of the evidence and are thus within the discretion of the court. Although a finding itself is not an appealable judgment (*Roche Brothers v. Garrigan* (1980), 88 Ill. App. 3d 107, 410 N.E.2d 338), it is a clear reflection of the trial judge's evaluation of the evidence presented. I fail to see how the majority expects to assess accurately a question of abuse of discretion when it ignores the trial court's actual findings clearly set forth as the basis of the holding at issue.

The trial court's findings pertinent to this appeal are that, under the controlling provisions and definitions in the Master Declaration, La Salle and Zekas did not prove they were owners of dwelling units; that La Salle and Zekas are not the developer or declarant; and that La Salle and Zekas, by advertising rentals and maintaining rental models, offices, and signs within the Triumvera complex, are violating a provision of the Master Declaration. It is consequently clear to me that the trial judge denied SRA's request for an injunction and granted that of the Homeowners' Association not because SRA did not prove that Birnloew, the original developer/declarant, could not conduct rental activities but because the judge concluded that neither La Salle nor Zekas had standing to assert any of the rights of either developer/declarant or unit owner. Their rental activities, therefore, were not even arguably permissible and were obvious violations of the Master Declaration's restriction against running a business within the Triumvera complex.

After a careful review of all the documents SRA presented to support its claim to ownership of the 80 unsold units and the undeveloped land, and to the status of assignee of the developer/declarant's rights, I find that the trial court abused its discretion when it found La Salle and Zekas (SRA) to be neither successor developer/declarant nor owner. The definitions of the terms "developer," "declarant," and "trustee" contained in both the Master Declaration and the Building Declarations clearly state that La Salle National Bank is both the trustee and, depending on the context, part of the entity defined as the declarant. The Master Declaration defines the developer as "Birnloew Development Corporation, its successors and assigns"; the Building Declaration defines the developer as "Triumvera, Inc., its successor or assigns, or such other persons or entities as the Trustee may from time to time designate." Keeping in mind that SRA had to present only enough evidence to raise a fair question of the legitimacy

of its claim and a likelihood of success on the merits (see *U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187), I necessarily conclude that the trial court abused its discretion by denying La Salle any right to an injunction because it was neither the trustee nor part of the declarant entity.

SRA introduced into evidence a further document by which Triumvera, Inc., assigned all its rights to SRA-Triumvera, and those rights were accepted on behalf of SRA-Triumvera by Zekas. Because the Homeowners' Association bases its standing to sue on the right to control the community facilities conveyed to it by Triumvera, Inc., it cannot deny that corporation's right to assign its beneficial interest in the property to SRA without calling into question its own standing.

The Master Declaration, declared as binding by the trial court, recites in at least five supplemental declarations that, through a documented chain of assignments, Birnloew assigned all its rights as declarant to Triumvera, Inc. I fail to see how the trial court can maintain that this binding record of assignments and the additional document showing that Triumvera, Inc., assigned all its rights to SRA fail to establish SRA's status as successor declarant/developer. On the basis of the clear meaning of the documents in the record, I must conclude that SRA has proved sufficiently that La Salle is the trustee and SRA the declarant. Consequently, SRA's right to conduct rental activities must be re-examined in light of this conclusion.

The trial court also found that SRA-Triumvera and La Salle were not the owners of the 80 unsold units. This, too, was a clear abuse of discretion. The Homeowners' Association claims that only the definition of "owner" in the Master Declaration is controlling, not that in the individual building declarations. While the definition of "owner" found in each building declaration is "[t]he person or persons whose estates or interests, individually or collectively, aggregate fee simple ownership of a Unit," that in the Master Declaration begins, "A Record Owner *** of a fee simple title to any dwelling unit." "Record" is further defined as a filing in the office of the Cook County registrar of titles. Because La Salle is recorded as the holder of title to all development land except that which has been conveyed to individual unit owners, and because the practice of the Torrens office is to issue individual certificates of unit ownership capable of being recorded only after all units in a building have been sold, it is axiomatic that La Salle *retains* record title to everything it has not yet conveyed away. Indeed, La Salle retains record title to *conveyed* property in buildings in which all units have not been sold. La Salle, as trustee, holds the registered legal title, and Zekas, pursuant to a real estate

contract introduced into evidence, holds the beneficial interest in the same property; that interest was sold to him and his associations by Triumvera, Inc., the predecessor corporation that also held nothing more than a beneficial interest and whose ownership of the beneficial interest also was not recorded in the Torrens office as a matter of Torrens policy. Under the well-established interpretation of an Illinois land trust, the interests of the trustee and the beneficiary together aggregate fee simple ownership. (See *Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 176 N.E.2d 659; see Ill. Rev. Stat. 1981, ch. 30, par. 302(g).) Because that same real estate contract is the basis for the Homeowners' Association conceding that SRA-Triumvera and Zekas are the developer/declarant and owner of the as-yet undeveloped land in the complex, the Association cannot build its case for injunction by ignoring the portions of a document adverse to its position. To permit it to do so is an abuse of discretion on the part of the trial court.

Further, both the Master Declaration and the Building Declaration provide that each owner is a member of the Homeowners' Association and thus owes to the Association a contractually agreed-upon monthly assessment. The Association's acceptance of approximately $10,000 from Zekas as one month's assessment due from SRA on the unsold units makes it clear that as a principle of equity, the Association should be estopped from now asserting that SRA has no ownership rights. SRA relied upon the Association's conduct in accepting SRA's payment, and, to its detriment, changed its position in reliance on the Association's conduct, thereby conferring a benefit on the Association. See *Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 299 N.E.2d 413.

The appropriate standard by which to determine whether the trial court abused its discretion is whether "the trial court *** act[ed] arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[ed] the bounds of reason and ignore[d] recognized principles of law so that substantial injustice resulted." (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.) In my opinion, the trial court clearly abused its discretion by ignoring recorded condominium documents stipulated to by both parties; by accepting the validity of a contract conveying a beneficial interest in undeveloped land but rejecting the same contract as proof of a conveyance of a beneficial interest in a developed portion of the same premises; by accepting a chain of assignment establishing the standing of the Homeowners' Association but denying that very chain as the foundation for the assignment of rights to Zekas and SRA; by refusing to allow relevant evidence of other leases offered by

SRA to contradict the Homeowners' claim that Triumvera was an ownership, not a rental community; and by ignoring testimony from the Torrens office establishing that Zekas' ability to produce only a Torrens receipt instead of certificates of title for each unsold unit was not a reflection of his lack of ownership but only of the particular practices of certificate issuance employed by the Torrens office.

The overwhelming evidence summarized above is clear proof that the trial court's holding should be reversed, not simply because I happen to disagree with it but also because the holding is devoid of the conscientious judgment and adherence to reason and recognized principles of law that define the limits of a court's discretion.

Only now is it appropriate to address the issue that the majority deemed fundamental, that of Birnloew's right to engage in rental activity at Triumvera. In light of the previous discussion, it is clear to me that Zekas and SRA have raised at least a fair question of their rights as both successor developer/declarant and owner. As the majority noted, SRA's right to a preliminary injunction was not dependent on absolute proof that it would be entitled to relief at the final hearing. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) The remaining question, then, is the extent to which SRA and Zekas could assert those rights in conjunction with their rental activities at Triumvera.

At the hearing, Zekas testified that in the course of his meetings with the Homeowners' Association, that group tacitly accepted his position as both successor developer/declarant and unit owner but would not allow him to exercise concurrently the rights granted to each entity by the various documents governing Triumvera. Zekas stated that although the Association told him he would have to choose between exercising the rights reserved to the declarant and those given to an. owner, his interpretation of both the Master Declaration and the Building Declaration convinced him that he was entitled to exercise both rights simultaneously, thus eliminating any barrier to the rental activities in which he was engaging. After examining the two documents, I conclude that Zekas' interpretation is correct.

The fundamental argument on which the Homeowners' Association rests its case is that while Zekas may have the right to rent its units in the manner granted to any owner, he may not exercise his reserved rights as declarant to promote the operation of a rental instead of a sales business. If Zekas chooses to lease his units, he must do so without benefit of on-site signs, models, offices in the models, or free access to the recreational and community facilities. Conversely, he may maintain his models, offices, signs, and the right to show the

community facilities only when dealing with *bona fide* prospective purchasers.

A careful examination of the Master Declaration, the document specifically acknowledged as controlling by the Homeowners' Association, reveals several phrases indicating that the status of declarant and that of owner may be vested simultaneously in the same person:

> "2.01. Declarant, as the owners in fee simple to the premises ***.

> * * *

> 2.07 *** Declarant *** shall have the following rights:
> * * *

> (h) the right to convey to the Homeowners' Association not more than (1) Dwelling Unit to be used by the Homeowners' Association as the residence for a maintenance employee ***."

In addition, the Building Declaration contains the following language:

> "2.07 Declarant's rights under this section shall terminate at such time as Declarant no longer is a Unit Owner ***.
> * * *

> 3.07 (a) If any Unit Owner *** other than the Trustee or Developer ***."

Basic principles of the construction of language in statutes, contracts, wills, and other documents held to be at least as binding as the Master Declaration have long established that when each of multiple requirements is intended to have separate, uncombined effect, the disjunctive "or" should be used. As a corollary, when items are meant to have effect when combined, conjunctive construction should be used, either by means of the word "and" or, as here, by phrasing the terms to indicate no barrier to simultaneous application. (See 1A Sutherland, Statutes and Statutory Construction sec. 21.14, at 90 (4th ed. 1972); see Williams, *Expressio Unius Est Exclusio Alterius*, 15 Marq. L. Rev. 191 (1931), for an examination of the widespread application of this principle to numerous types of documents.) Further, covenants should be most strongly construed against the covenantor, in this case the Homeowners' Association, and all doubts and ambiguities should be resolved in favor of natural rights and against restrictions. (*Kessler v. Palmeri* (1972), 3 Ill. App. 3d 901, 278 N.E.2d 813.) Finally, the maxim *expressio unis est exclusio alterius* teaches that when one thing is expressed, by inference all things omitted are excluded. (*Panarese v. Hosty* (1982), 104 Ill. App. 3d 627, 432 N.E.2d 1333.) Nowhere in any of the documents are the terms "declarant" and

"owner" specifically made disjunctive; consequently, their conjunctive use in the several noted passages supports Zekas' claim that he is entitled to exercise simultaneously all rights guaranteed to both declarant and owner.

The sole basis of the Homeowners' Association's claim to an injunction is its right to enforce both its own by-laws and the covenants and restrictions specified in the Master Declaration. The Association claims that the breach of such a covenant or restriction alone constitutes sufficient injury to justify the issuance of an injunction against the breaching party. In addition, if the declarant wilfully violates the restriction, a court is not required to balance the equities, but may issue the injunction without the plaintiff showing substantial comparative injury. (*Forest Glen Community Homeowners Association v. Nolan* (1982), 104 Ill. App. 3d 108, 432 N.E.2d 636.) However, when one party's claimed right is in direct conflict with an equally clear and ascertainable right of the opposing party, the appropriate approach to be made by the court is to balance the equities. The threatened injury must be immediate, certain and great, whereas the loss to the opposing party must be comparatively small and insignificant if the injunction is to be granted. *Illinois Housing Development Authority v. Arbor Trails Development* (1980), 84 Ill. App. 3d 97, 404 N.E.2d 1097; see *Biggs v. Health & Hospitals Governing Com.* (1977), 55 Ill. App. 3d 501, 370 N.E.2d 1150.

Zekas and SRA-Triumvera established and the trial court acknowledged that they would suffer great injury if not allowed to rent their units with full ownership privileges delegated to their tenants; the removal of their on-site advertising eliminated the possibility of "drive-ins," the greatest source of new tenants. On the other hand, the Homeowners' Association suffered no injury at all. The substitution of visits to the property by potential renters instead of potential purchasers subjected the property to no additional burden. No additional signs were erected, no additional units were designated models, and no additional access to the community facilities was required. Therefore, when the equities are balanced, SRA and Zekas clearly have shown that they are suffering the greater injury by far.

The majority's next contention is that SRA's suit for injunction is not yet ripe because SRA failed to show that the Homeowners' Association had in fact refused to grant membership or access privileges in the recreational facilities to SRA's tenants or prospective tenants; apparently, then, SRA's injury is purely speculative. Further, the majority justifies its position on this issue with the statement that anyone's right to access to the community facilities is controlled by the "By-

laws and reasonable rules and regulations of the Homeowners' Board." Nowhere are the details of these bylaws, rules and regulations set forth. The only specific information on their contents was provided in testimony given by the facilities' manager.

Her explanation of the operation of these "By-laws and reasonable rules and regulations" was that access to the facilities was granted to tenants when the owner proved ownership and then delegated his rights to use the facilities to his tenant. Some indicia of "membership" was then apparently given to the tenant. The Homeowners' Association claims that Zekas' failure to produce a Torrens certificate of title for each of his 80 units automatically precludes his ability to prove ownership and therefore to delegate his "membership" rights. The Association's claim is recreant in nature and wholly irrational.

The testimony of the Torrens office representative has already been examined; Zekas' lack of a Torrens certificate of title should not have been found to substantiate the Association's claim that he was not an owner. Indeed, the title examiner testified to the effect that no other unit owner in any building containing an unsold unit would be able to produce a Torrens certificate of title. Why the majority again raises this specious defense in the guise of undocumented "reasonable rules and regulations of the Board" is beyond my understanding.

Zekas testified that he had been informed specifically that his tenants would not be granted access to the recreational facilities even if they applied. "It is one of the oldest and perhaps the wisest maxims of equity that the law will not require a person to do a useless act." (*Rock Island Y.W.C.A. v. Bestor* (1977), 48 Ill. App. 3d 761, 765, 363 N.E.2d 413, 416.) I find untenable both the majority's demand that the tenants make a futile request in order to establish injury and its raising the smokescreen of "reasonable rules and regulations" to hide the lack of support for its position. It is clear to me that while SRA and Zekas have fulfilled all four requirements for a preliminary injunction, the Homeowners' Association has not. While enforcement of a covenant is an equitable right, it should not rank as sufficiently deserving of protection by injunction to prevail over a clear showing of a protectible interest suffering an irreparable injury without adequate remedy at law.

Finally, the majority appears to believe it can placate a justifiably outraged declarant/owner by stating that the grant of the injunction to the Homeowners' Association will thereby "reduce the presence of SRA on the premises" and will enable the parties to resolve their problems amicably under the watchful eye of the court. In light of tes-

timony by Zekas, his associates, Ben Polisky of the Homeowners' Association, and Nikki Johanneson, manager of the community facilities, the bitter accusations, insults, and threats freely and loudly exchanged between the parties and their representatives preclude any real possibility of a friendly settlement. For the majority to suggest that its affirmance of the trial court can be justified on such spurious grounds bespeaks an apparent ignorance of the realities of this case. Far from creating an atmosphere of conciliation, all that has been accomplished by the trial court's granting an injunction to the Homeowners and denying an injunction to Zekas and SRA is an escalation of the animosity between the parties. The majority concludes its discussion of SRA's exclusion from the community facilities with a masterful exhibition of sleight of hand: SRA was not denied its request for injunction preventing the Homeowners' Association from barring SRA from the recreational building; rather, the trial judge simply refused to grant the injunction "at this time." I fail to perceive the practical distinction the majority finds so clear. An injunction by any other name . . . .

The majority's complete misperception of the import of the trial court's findings and holdings is revealed in its statement that SRA may rent the units it owns in the same manner as any other individual unit owner. On the contrary, not only would any other individual unit owner be able to show a prospective tenant the complete facilities, he would be able to guarantee his tenant right of access to those facilities. This is precisely what the trial court said SRA may not do. The trial court denied SRA any rights in the property at all. It seems clear to me that the majority is basing its affirmance of the trial court on an erroneous interpretation of the case. It is also quite clear to me that the majority's ruling, which I find contrary to established law, may very well devastate economically the property interests of SRA-Triumvera.

For the reasons outlined above, I would reverse the trial court's decisions on both injunction requests.