IOLA MARTIN *et al.*, Plaintiffs-Appellees, *v.* PRAIRIE ROD AND GUN CLUB, Defendant-Appellant.

Third District   No. 75-287

Opinion filed May 31, 1976.

34

Kritzer, Stansell & Critser, of Monmouth, and McLaughlin & Hattery, of Galesburg (Richard Whitman, of counsel), for appellant.

Standard & Tenold, of Monmouth, and LaMarr Evans, State's Attorney, of Oquawka (James Standard, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

In the trial court plaintiffs brought an action against the Prairie Rod and Gun Club to obtain specific performance of a contract to sell real estate located in Henderson County and to compel an accounting. The trial court granted plaintiffs' motion for summary judgment and ordered defendant to convey the real estate and render an accounting. The defendant has perfected this appeal.

Defendant has raised several issues on appeal. It is only necessary that we consider one of those issues in order to resolve the conflict presented. Defendant contends that the contract in question is void *ab initio* as violative of the rule against perpetuities.

In order to fully understand the rights claimed by both parties to this appeal in the real estate involved we must briefly set forth a history of the transactions which eventually resulted in this lawsuit. On September 29, 1932, the defendant purchased a 111-acre farm from Charles and Rena Pence. In connection with this sale a written agreement was entered into between defendant and Charles and Rena Pence which was itself recorded along with the deed in the Henderson County land records. This agreement recited the above mentioned conveyance of the Pence farm and further provided that defendant lease back to Charles and Rena Pence approximately 70 acres of the 111-acre farm which had just been conveyed to defendant. The term of this lease agreement was for the lives of Charles and Rena Pence. In addition to the lease for life to the original grantors, the 1932 agreement provided that the defendant promised and agreed that if it thereafter at any time wished to sell any part or all of the real estate involved, Charles and Rena Pence had the option to purchase the lands upon such terms and conditions as defendant would "name and prescribe." The agreement set out further that "[i]f after the death of [Charles and Rena Pence], [the defendant] shall wish to sell all the [farm] or any part thereof, then *the [defendant] promises and agrees to give to*

*the heirs of [Charles and Rena Pence] the option to purchase said lands* or *any part thereof,* upon the conditions and terms to be prescribed by [the defendant]; provided however, that if said heirs be unknown to the [defendant] at that time, then and in that case publication in a newspaper of general circulation in Henderson County, Illinois, giving notice to the heirs of Charles and Rena Pence, as the case may be, that said real estate is to be sold, which publication shall be made once each week for four weeks prior to the making of any sale, shall be sufficient notice to the heirs for the exercise of their option." (Emphasis added.)

Both Charles and Rena Pence died prior to 1971. In November of 1971 the defendant decided to sell the Pence farm and solicited bids for that purpose. Invitations to bid were sent to several interested persons including some of the Pence heirs. The highest bid, $36,000, was that of someone not a Pence heir. The terms contained in the invitation to bid provided that the bids remain open for 60 days specifically to allow for the operation of the option and/or first preemptive right in the Pence heirs pursuant to the 1932 agreement. Following the terms of the 1932 agreement the defendant published a notice of sale in the local newspaper informing the Pence heirs of the sale and the prerequisite that they notify defendant by January 6, 1972. Subsequently two groups of Pence heirs appeared and attempted to exercise their first preemptive right to purchase the farm, including making a tender.[1] The defendant then abandoned a desire to sell the farm to anyone and has refused to sell to the highest bidder or to any of the Pence heirs either collectively or individually. Plaintiffs sued for specific performance and were successful on a motion for summary judgment. Defendant appealed claiming the summary judgment in favor of plaintiffs was improperly granted. We must agree.

■■■ The rule against perpetuities is a substantive rule of property law and not a rule of construction. Therefore we must decide whether the terms of the 1932 agreement creating a preemptive right of first refusal to repurchase any part or all of the farm property violates the technical provisions of the rule. Traditionally the rule against perpetuities can be stated as follows: "No interest in property is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest." The interest in the Pences' and their heirs was created upon the execution of the 1932 agreement, and to fall within the time limit the preemptive right of first refusal must not by any remote possibility become exercisable beyond the lives in being at the execution of the 1932 agreement plus 21 years. Obviously the preemptive right of first refusal

---

[1] Despite the use of the term "option" in the 1932 agreement, we choose to characterize the right as a first preemptive right.

cannot be exercised until the defendant, here, chose to sell the farm property. This preemptive right could, then, remain contingent *ad infinitum* if the defendant chose to never sell. Therefore the rights created in the Pence heirs by the 1932 agreement fall outside the time limits prescribed by the common law rule against perpetuities and are void *ab initio* from the 1932 agreement.

The Illinois statutory version and modification of the common law rule against perpetuities is contained in Ill. Rev. Stat. 1975, ch. 30, par. 191 *et seq.* Said statute modifies the common law rule against perpetuities in Illinois from its effective date of September 22, 1969, hence. By its own terms the act applies only to instruments which become effective after the effective date of the statute which makes the common law rule against perpetuities applicable to the present case.

■■ Several theories are urged by plaintiffs which would except the rights created in them by the 1932 agreement from violating the rule. Initially plaintiffs attach special significance to the practical difference between an option to purchase realty as opposed to a preemptive right of first refusal. "In a typical option [to purchase] the optionee has the absolute right to purchase something for a definite consideration." (*Atchison v. City of Englewood,* 170 Colo. 295, 305, 463 P.2d 297, 301 (1969), as modified on denial of rehearing (1970). The optionee has the right to compel a sale on the agreed terms whenever he desires. To the contrary, a preemptive right to purchase real estate, involves the creation of a privilege to buy only on the formulation of a desire by the owner to sell and usually upon the terms and price at which the owner is willing to sell to a third person. (See 61 Am. Jur. 2d *Perpetuities and Restraints on Alienation* §54.) It is argued that a preemptive right in no way restrains the alienability of property as does the typical option to repurchase. By this distinction plaintiffs seek to avoid the prevailing rule of law that "[a]ccording to the weight of authority in jurisdictions applying the common-law rule against perpetuities, an option to purchase real property, unlimited as to the time for its exercise or extending beyond the period limited by the rule against perpetuities, violates such rule and is invalid." 162 A.L.R. 581-582.

■■ The ownership of property is not unqualified and the law can impose restrictions on the right to dispose of property based on reasons of public policy. The underlying purpose of the rule against perpetuities is founded on the public policy of preventing the fettering of the marketability of property over long periods of time by indirect restrains upon alienation. The law and public policy favor the free alienability and transferability of property. The rule against perpetuities is a means for obtaining that end. We find the distinction between an option and a preemptive right of first refusal insignificant, as both have the effect of

fettering the marketability of property, with the difference being only the degree of restriction. Generally the rule against perpetuities has been applied to preemptive rights of first refusal as well as to the typical option. See *Campbell v. Campbell*, 313 Ky. 249, 230 S.W.2d 918 (1950); *Maddox v. Keeler*, 296 Ky. 440, 177 S.W.2d 568 (1944); *Atchison v. City of Englewood.*

■■ Plaintiffs also contend that any rights created in them are merely contractual rights, personal to them, and are not an interest in property. Plaintiffs cite *Keogh v. Peck*, 316 Ill. 318, 147 N.E. 266 (1925), for the proposition that no interest in land is created by an option and that the effect is to remove option contracts from the necessity of complying with the rule against perpetuities. However, in 61 Am. Jur. 2d *Perpetuities and Restraints on Alienation* §42, at 44-45 (1972), the prevailing rule of law is aptly stated, "The rule against perpetuities concerns rights of property only, and does not affect the making of contracts which do not create the rights of property, and, therefore, has no relation to the duration of contracts. If however, a contract creates an interest in property which equity can enforce, then the rule against perpetuities applies." In the instant case specific performance to enforce the preemptive right of first refusal was sought, decreed, and would be upheld, were it not for a violation of the rule against perpetuities.

■■ The preemptive right of first refusal involved here is not in form or substance a limitation on an estate conveyed in the nature of a right of reentry for condition broken, which would fall within a recognized exception to the rule. Nor is the interest in the instant case a possibility of reverter. Although an option or preemptive right is analytically similar to both a possibility of reverter and a right of reentry for condition subsequent that is broken, neither of the latter is subject to the rule against perpetuities. "The exception of such interests from compliance with the rule has an historical explanation * * * not applicable to options to repurchase. Hence the underlying policy of the rule against perpetuities precludes any extension of the exception to include options to repurchase." Restatement Property §394, comment *a* (1944).

■■ The *Keogh* case, cited by plaintiffs is further not applicable because the option to purchase there was connected with a long-term lease agreement, with the option in the lessee. Though the case at bar also involves a lease, it is obviously distinguishable from those that fall within this recognized exception to the rule against perpetuities. It is the general rule that the common law rule against perpetuities does not apply to options or preemptive rights to purchase contained in a lease to purchase the fee during the term of the lease. (*Atchison v. City of Englewood*; *Weber v. Texas Co.*, 83 F.2d 807 (5th Cir. 1936); *Keogh v. Peck*.) The reason for this exception to the rule is a lessee in possession of lands where

the term of the lease is long enough to bring the possible application of the rule against perpetuities into question needs to be able to securely plan for his long-term future utilization of the lands. No lessee would feel secure in building structures upon premises subject to a long-term lease without his option to purchase being valid and enforcible. The social utility of long-term leases outweighs the public policy against fettering the marketability of land with restraints, and an exception to the rule against perpetuities is useful for that situation.

The plaintiffs, however, are not and were not leasees under the 1932 agreement with defendant, Prairie Rod and Gun Club. Charles and Rena Pence were lessees for life of a part of the farm, and the preemptive right of first refusal to purchase might have been valid if exercised during the term of their lease. It was not so exercised and the lease terminated at their deaths. The exception for an option or preemptive right in a leasehold agreement is, therefore, not applicable to the Pence heirs. No logical reason is apparent for extending the leasehold exception to cover the instant situation when the social utility aspect of a long-term lease is lacking.

The case at bar does involve contract rights freely and openly entered into by the respective parties to the 1932 agreement. Part of the consideration for the original sale to defendant was the lease back of the habitable portions of the farm and the preemptive right, labeled an option to the grantors and their heirs, to repurchase the farm if defendant ever desired to sell. The 1932 agreement provided specific instructions by which the Pence heirs were to be notified and could thereafter exercise their preemptive rights. Thus the difficulty which the court faced in *Atchison v. City of Englewood*, of ascertaining and locating the heirs and holders of the preemptive right at a future date is not present here. The theory that defendant by its conduct is estopped from asserting or has waived the rule against perpetuities has not found acceptance. (*Schuknecht v. Schultz*, 212 Ill. 43, 72 N.E. 27 (1904); Annot., 162 A.L.R. 156 (1946).) Defendant in the case at bar raised the issue of the rule against perpetuities in a motion to vacate the summary judgment in favor of plaintiffs.

Although equitable considerations urge that plaintiffs' right be enforced, the doctrine and the public policy of the rule against perpetuities are well entrenched and difficult to overcome.

The circuit court erred in entering summary judgment for plaintiffs and in denying defendant's motion to vacate that summary judgment and to dismiss plaintiffs' complaint.

Reversed.

ALLOY, P. J., and STOUDER, J., concur.