MERL L. MARCY *et al.*, Plaintiffs-Appellants, v. MERLIN L. MARKIEWICZ, SR., *et al.*, Defendants-Appellees and Counterdefendants-Appellees (Inland Real Estate Corporation, Counterplaintiff-Appellant).

First District (1st Division)   No. 1—91—0256

Opinion filed July 27, 1992.—Rehearing denied October 2, 1992.

802

Holleb & Coff, of Chicago (Michael A. Reiter and J. Michael Williams, of counsel), for appellants Merl L. Marcy and Gerald J. Marcy.

Wolin & Rosen, Ltd., of Chicago (William S. Wigoda and Nancy L. Hirsch, of counsel), for appellant Inland Real Estate Corporation.

Sonnenschein, Nath & Rosenthal, of Chicago (Richard L. Fenton, Steven M. Levy, and Lorie A. Chaiten, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from an action brought by plaintiffs Merl and Gerald Marcy (Marcys) against Merlin L. Markiewicz, Sr., and Doris Markiewicz and their four children (collectively Markiewiczes) and Inland Real Estate Corporation (Inland) for breach of an alleged right of first refusal to purchase the Evergreen Court Apartments in Arlington Heights. Inland cross-claimed against the Markiewiczes for breach of warranties.

The circuit court granted the Markiewiczes' motions for summary judgment against the Marcys and Inland on all claims. The circuit court held that the alleged right of first refusal was void because it violated the rule against perpetuities.

On September 17, 1964, the Marcys and the Markiewiczes entered into a partnership agreement for the purpose of developing and constructing buildings on two parcels of realty. The developments are now known as Shalamar (Parcel A) and Evergreen Court (Parcel B). On December 17, 1965, during the completion of Shalamar, but before developing Evergreen Court, the Marcys and the Markiewiczes signed a partnership dissolution agreement (Dissolution Agreement), which provided that the Marcys and their parents would take title of Shalamar and the Markiewiczes would take title to the adjacent Evergreen Court. The Agreement contained the following paragraphs:

> "(15) If at any time hereafter, MARKIEWICZ receives from a ready, willing and able purchaser an acceptable bona fide offer to sell to such purchaser, Parcel B or any part thereof, or

any property which includes all or part of Parcel B, MARKIEWICZ shall give to MARCY and SONS notice, specifying the name and address of the purchaser and the price and terms of the offer accompanied by MARKIEWICZ'S affidavit that the proposed sale is in good faith. MARCY and SONS shall thereupon have the prior option to purchase Parcel B or the part thereof or the entire property covered by such offer at the price and on the terms of the offer, which option MARCY and SONS may exercise by giving MARKIEWICZ notice within 15 days after their receipt of MARKIEWICZ'S notice of the offer ***.

\* \* \*

(19) This Agreement shall be binding upon and inure to the benefit of the respective heirs, devisees, legatees, personal representatives, executors, administrators and assigns of the parties hereto."

Donald Staehlin, the attorney who represented Merlin Markiewicz, Sr., during the dissolution, testified at his deposition that he had advised Merlin Sr. against signing any document which contained a right of first refusal. Ignoring such advice, Merlin Sr. signed the Dissolution Agreement. Thereafter, Merlin Markiewicz, Sr., gifted a portion of the beneficial interest in the Evergreen Court land trust to his four children, Merlin Jr., Phillip, Susan Snyder and Sandra Staehlin. The Dissolution Agreement was not recorded until December 5, 1974.

On September 23, 1985, 19 years and 9 months after execution of the agreement, the Markiewiczes entered into a contract for the sale of Evergreen Court to Inland (Evergreen Contract). The Evergreen Contract contained the following provisions:

"The property is free of violations, and the interior and exterior structures are in a good state of repair, free of leaks and structural problems. The property is in full compliance with City and County ordinances, and no one has a lease that exceeds the normal one-year term at current market rents, nor has an option to purchase or extend.

\* \* \*

The closing shall occur no later than December 31, 1985, at which time title to the above property shall be merchantable; and, as the case may be, the beneficial interest of the titleholding trust shall be free and clear ***."

On about December 15, 1985, Inland's attorneys reviewed the commitment for title insurance on the Evergreen Court property. In-

land's attorneys noticed the following exception on page 3, item 14 of the commitment:

> "TERMS, PROVISIONS AND CONDITIONS CONTAINED IN AGREEMENT RECORDED FEBRUARY 5, 1974 AS DOCUMENT NO. 22619924."

Inland's attorney contacted the Markiewiczes' attorney and requested copies of the referenced agreement. After reviewing the Dissolution Agreement, Inland's attorney noted that paragraph 15 disclosed a possible right of first refusal in favor of the Marcys. Inland's attorney contacted the Markiewiczes' attorney regarding the right of first refusal. The Markiewiczes' attorney indicated that he did not know anything about the alleged right.

The sale of Evergreen Court to Inland was closed on December 20, 1985. Inland's vice-president, Joseph Cosenza, and two attorneys representing Inland were present. Susan Snyder attended the closing on behalf of the Markiewiczes. One of Inland's attorneys questioned Snyder about the agreement and the alleged right. Inland's attorney testified that he recalled Snyder's response as follows:

> "She [Snyder] indicated to me that this paragraph arose in the context that the Marcys owned property next to the Evergreen Apartments, that they were family members, they were related, and that this whole document [Dissolution Agreement] was created for easements and so on between the two parcels, and that the Marcys no longer had any right to purchase the property, were not interested in purchasing the property and words to the effect, you know, basically there was nothing to worry about at this time."

Snyder testified at her deposition that she knew of no right of first refusal. Further, Snyder testified that she did not read the Dissolution Agreement because it was taken away from her too quickly at the closing. Moreover, Snyder did not request her attorney review the Dissolution Agreement. Snyder did, however, sign an affidavit dated December 20, 1985, which provides:

> "The undersigned as a beneficiary under American National Bank and Trust Company of Chicago, Trust No. 56992 dated November 1, 1985, being first duly sworn on oath, deposes, states and warrants that there are no existing, pending or threatened liens, citations, assignments, claims or encumbrances effecting [sic] the beneficial interest or power of direction of, under or over the aforementioned Trust, and there are no past-due Trust fees outstanding with respect thereto."

After obtaining the above affidavit, Inland closed the purchase of Evergreen Court.

About one month after the closing, the Marcys contacted Inland and the Markiewiczes asserting that their right of first refusal had been violated. Inland offered Evergreen Court to the Marcys on the same terms under which it had purchased the property, but the Marcys refused.

The Marcys filed their original complaint on April 11, 1986, seeking specific performance to have the sale of Parcel B to Inland declared void and to obtain title to that parcel. In January 1988, the Marcys voluntarily dismissed their equitable claims and filed the amended complaint, seeking compensatory and punitive damages against the Markiewiczes under the theories of breach of contract and conspiracy. The matter, therefore, was transferred to the law division in February 1988. The Marcys also sued Inland under the theory of tortious interference of a contract. Inland cross-claimed against the Markiewiczes for breach of purported title warranties and for negligent misrepresentation.

On March 17, 1989, the Marcys served the Markiewiczes with a supplemental request for production of documents. After the Markiewiczes failed to produce any documents pursuant to the request, the Marcys moved to compel the production of such documents. On June 9, 1989, the circuit court judge to whom contested motions were assigned entered an order compelling the Markiewiczes to produce all documents responsive to the Marcys' request on or before June 19, 1989. Again, the Markiewiczes failed to produce any such documents. On July 10, 1989, the same judge ordered the Markiewiczes to produce the requested documents by July 20, 1989. At a status hearing on July 24, 1989, that judge was informed that the Markiewiczes had not produced any documents pursuant to the June 9 and July 10 orders. The judge struck the Markiewiczes' pleadings and entered a default order in favor of the Marcys on the issue of liability.

On August 18, 1989, the Markiewiczes moved to vacate the default. At this time, the Markiewiczes still had not complied with the production request. On August 29, 1989, the judge granted the motion and entered an order vacating the default and reinstating the Markiewiczes' pleadings based on their representation that they would produce the requested documents. The judge ordered the Markiewiczes to produce the documents within 45 days.

On October 12, 1989, the judge was informed at a status hearing that the Markiewiczes had still not complied with the June 9, July 10

and August 29 orders compelling them to produce documents. The judge, again, struck the Markiewiczes' pleadings and entered a default judgment against the Markiewiczes on the issue of liability. On December 5, 1989, the Markiewiczes moved to vacate the default judgment on grounds that they had produced some, but not all, of the documents required pursuant to the orders. On January 5, 1990, after reviewing the materials produced by the Markiewiczes as of that date, the judge denied the motion. On June 27, 1990, the Markiewiczes moved, again, to vacate the October 12, 1989, default judgment. On August 1, 1990, the circuit court judge conducted an evidentiary hearing on the matter. At the hearing, Snyder testified as manager of Evergreen Court prior to the sale to Inland. Snyder had kept the business books and records and personally searched for the documents requested by the Marcys. After hearing the evidence, the judge denied the motion to vacate. On August 10, 1990, the Markiewiczes filed an emergency motion to reconsider the denial of the June 27, 1990, motion to vacate. For the third time, the circuit court judge denied the Markiewiczes' motion to vacate.

The matter was then set for prove-up of damages and transferred to a new judge. On November 9, 1990, in front of the judge newly assigned to the case for prove-up, the Markiewiczes renewed their motion to vacate the default judgment. This motion did not lay out any changed circumstances or additional facts regarding the Markiewiczes' failure to comply with the other judge's orders to compel them to produce the requested documents. The new circuit judge heard oral arguments on the renewed motion. On November 20, 1990, the new judge granted the Markiewiczes' motion to vacate, stating that the entry of the default judgment "was, at law, a clear case of judicial overkill."

Additionally, on November 9, 1990, the Markiewiczes moved for summary judgment as to liability against both the Marcys and Inland. The Markiewiczes argued that the right of first refusal provision contained in the Dissolution Agreement violated the rule against perpetuities. The Marcys filed a cross-motion for summary judgment against the Markiewiczes. On December 12, 1990, Inland filed a cross-motion for summary judgment against the Markiewiczes.

On December 17, 1990, the new judge granted the Markiewiczes' motions for summary judgment against the Marcys and Inland, and denied the cross-motions. The Marcys appeal the vacation of the October 12, 1989, default judgment order, and additionally, along with Inland appeal the respective grants of summary judgment in favor of the Markiewiczes.

■ The Marcys first argue that the circuit court erred in vacating the default judgment entered against the Markiewiczes. The Illinois Supreme Court has indicated that prior interlocutory rulings should be modified or vacated by a successor judge only after careful consideration. (*Balciunas v. Duff* (1983), 94 Ill. 2d 176, 187, 446 N.E.2d 242, 247, citing *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121, 382 N.E.2d 1217, 1220; *Leopold v. Levin* (1970), 45 Ill. 2d 434, 446, 259 N.E.2d 250, 257.) The Illinois Supreme Court has also stated that "[i]n the context of discovery, where abuse is said to be widespread and delay phenomenal [citations], we think it is particularly appropriate for a judge before whom a motion for reconsideration is pending to exercise considerable restraint in reversing or modifying previous rulings." (*Balciunas*, 94 Ill. 2d at 187-88, 446 N.E.2d at 247.) *Balciunas* requires that there be a change of circumstances or additional facts which would warrant reversing a discretionary discovery ruling made by a prior judge. *Balciunas*, 94 Ill. 2d at 188, 446 N.E.2d at 247.

■ The Markiewiczes argue that there were changed circumstances, and thus, the judge properly vacated the default order entered against them. The "changed circumstance" which the Markiewiczes claim negates the default is that the Marcys' expert did not use the requested documents. This is not a changed circumstance. It would have been impossible for the Marcys' expert to use the documents because they were not produced. Moreover, the Marcys were entitled to the documents which they requested; to what use or whether or not the Marcys use them at all is irrelevant.

Further, the Markiewiczes argue that the judge properly vacated the default judgment order because the Marcys were not prejudiced. As in *Hall v. Jacobs, Camodeca & Timpone* (1985), 134 Ill. App. 3d 516, 481 N.E.2d 5, this argument misses the point. The entry of the default resulted from the Markiewiczes' refusal to comply with court-ordered discovery. *Hall* is directly analogous to the case at bar. In *Hall* the defendants engaged in a

> "program of deliberate defiance of the court's authority and rules of discovery. They completely ignored various court admonitions, sanctions and orders compelling discovery. Even after [the judge] ordered their answer stricken and entered the default order, defendants did not cease their contumacious conduct. Instead, they repeatedly sought reconsideration of the sanctions until they obtained a vacation of the sanctions from a successor judge." *Hall*, 134 Ill. App. 3d at 521, 481 N.E.2d at 9.

In the case at bar, after violating the circuit court judge's June 9 and July 10, 1989, orders compelling the Markiewiczes to comply with the Marcys' production request, the judge entered a default judgment on July 24, 1989, against the Markiewiczes on the issue of liability. Then, the Markiewiczes moved to vacate the judgment. On August 29, 1989, the judge granted the motion to vacate based on the Markiewiczes' representation that they would produce the requested documents pursuant to the August 29 order. After receiving 45 days in which to produce the documents, the Markiewiczes still had yet to produce any such documents. Therefore, on October 12, 1990, the judge again entered a default judgment against the Markiewiczes on the issue of liability. Two months later, after producing *some* of the documents, the Markiewiczes moved to vacate the judgment. On January 5, 1990, the judge denied the motion. Then, again, on July 27, 1990, the Markiewiczes moved to vacate the default judgment. After an evidentiary hearing on August 1, 1990, the circuit court judge denied the motion. On August 10, 1990, the Markiewiczes filed an emergency motion to reconsider the denial of their motion to vacate the default. The circuit court also denied that motion.

After the matter was assigned to a new judge for prove-up on the issue of damages, on November 9, 1990, the Markiewiczes renewed their motion to vacate the default. On November 20, 1990, the new judge granted the motion, although no new facts were presented, stating that the default judgment was "judicial overkill." These facts show blatant forum shopping, which we will not tolerate. Accordingly, we reverse the prove-up judge's vacation of the default judgment order and reinstate the October 12, 1989, default order. Since the default order against the Markiewiczes on the issue of liability is reinstated, summary judgment cannot be entered against the Marcys and in favor of the Markiewiczes. We, therefore, also reverse the circuit court's grant of summary judgment against the Marcys.

■ Next, we address whether summary judgment was properly granted against Inland and in favor of the Markiewiczes. A party is entitled to summary judgment only where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) In deciding whether a material fact exists, the pleadings, depositions, admissions, exhibits and affidavits on file must be construed strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) "Where the trial court has determined the construction of a contract as a matter of law, the reviewing court may independently construe the contract unrestrained by the

trial court's judgment." *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 240, 494 N.E.2d 830, 833.

■ The circuit court found that the Markiewiczes were entitled to summary judgment against Inland because the Marcys' right of first refusal was void as violative of the rule against perpetuities (Rule). The Rule, as applicable to this case, is a common law doctrine which operates to prevent the remote vesting of contingent interests in property. (*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1966), 67 Ill. App. 2d 171, 193-94, 214 N.E.2d 471, 481.) The Rule provides that no interest in property is valid unless such interest vests, if at all, within 21 years of a life or lives in being at the time of the creation of the interest. (*McKibben v. Pioneer Trust & Savings Bank* (1937), 365 Ill. 369, 373, 6 N.E.2d 619, 621.) No interest which is vested at the time of the creation of the instrument is subject to the Rule. *Deiss v. Deiss* (1989), 180 Ill. App. 3d 600, *appeal denied* (1989), 126 Ill. 2d 558, 541 N.E.2d 1105.

■ Relying on *Martin v. Prairie Rod & Gun Club* (1976), 39 Ill. App. 3d 33, 348 N.E.2d 306, the circuit court stated that the right in the Dissolution Agreement violated the Rule because it might ripen beyond the time permitted by the Rule. *Martin* is easily distinguished from the case at bar. In addition to boilerplate language, the contract in *Martin* contained the following very specific language:

"If after the death of [Charles and Rena Pence], [the defendant] shall wish to sell all the [farm] or any part thereof, then *the [defendant] promises and agrees to give to the heirs of [Charles and Rena Pence] the option to purchase said lands or any part thereof,* upon the conditions and terms to be prescribed by [the defendant]." (Emphasis in original.) (*Martin,* 39 Ill. App. 3d at 34-35, 348 N.E.2d at 307.)

The above language expressly gave the Pences' heirs the right of first refusal; thus, the right was not personal. In contrast, the right of first refusal in the present case contains the express language that only "MARCY and SONS" are entitled to notice of a proposed sale and have the right of first refusal. Clearly, the paragraph did not allow the right to be conveyed, by devise or sale or in any manner, to anyone. Since the right was personal to the Marcys, it does not violate the Rule.

The circuit court held that the right could be exercised by the Marcys' heirs pursuant to paragraph 19 of the Dissolution Agreement. The court further concluded that since a decision to sell Parcel B might be made in the future, beyond the time permitted by the Rule,

the exercise of the right of first refusal by the Marcys' heirs would be outside the period of time prescribed by the Rule.

The cases cited by the Marcys concerning this issue are persuasive and on point. In *Vogel v. Melish* (1964), 31 Ill. 2d 620, 203 N.E.2d 411, the shareholders of a close corporation entered into a stockholders' agreement which created a right of first refusal in each shareholder if the other shareholder ever received a *bona fide* offer from a third party to purchase such shares at a price at which the other shareholder was willing to sell. The stockholders' agreement also contained a paragraph which stated that the agreement would be binding and inure to the benefit of the parties and their administrators, heirs, executors, etc. Following the death of one of the shareholders, the plaintiff shareholder sought a declaratory judgment that he was entitled to exercise his right of first refusal with respect to the decedent's shares. The Illinois Supreme Court held that the right of first refusal was personal to the parties to the agreement and that it terminated upon the death of either shareholder. Further, the court held that the right of first refusal, in view of the personal nature of the agreement, does not negate the implied condition that death of either party excuses the survivor from further performance and is properly construed as applying only where the parties during their lifetimes contract for the sale of shares pursuant to the agreement. *Vogel*, 31 Ill. 2d at 626-27, 203 N.E.2d at 414.

The Illinois Supreme Court in *Galler v. Galler* (1964), 32 Ill. 2d 16, 203 N.E.2d 577, similarly held that a clause in a shareholders' agreement providing that the agreement "shall be binding upon and shall inure to the benefits [*sic*] of [the parties' heirs, etc. was] intended to be operative only as long as one of the parties is living." (*Galler*, 32 Ill. 2d at 31, 203 N.E.2d at 586.) Similarly, an agreement to arbitrate a dispute was held to have terminated upon the death of either of the parties, notwithstanding a provision that the agreement be binding on the parties' heirs. *Aldrich v. Aldrich* (1931), 260 Ill. App. 333, 343-45.

Paragraph 19 does not create a power in the Marcys' heirs to exercise the right of first refusal because such right is personal. We hold that the circuit court erred in finding that the right of first refusal was void as against the Rule.

■ ■ The above holding, however, does not necessitate that we reverse the circuit court's grant of summary judgment against Inland and in favor of the Markiewiczes. Inland cross-claimed against the Markiewiczes for breach of warranty, namely, merchantable title. Merchantable title is " 'a title not subject to such reasonable doubt as

would create a just apprehension of its validity in the mind of a reasonable, prudent and intelligent person; one that persons of reasonable prudence and intelligence, guided by competent legal advice, would be willing to take and pay the fair value of the land for.' " *Sinks v. Karleskint* (1985), 130 Ill. App. 3d 527, 529, 474 N.E.2d 767, 769, quoting *Eggers v. Busch* (1895), 154 Ill. 604, 606-07, 39 N.E. 619, 620.

■ Even though we hold that the right of first refusal in the present case is not void, we affirm the circuit court's grant of summary judgment against Inland. Inland admits that at least two weeks prior to the closing, it was informed of the right of first refusal contained in the Dissolution Agreement. "[A] purchaser of real estate who enters a contract to buy real estate with actual knowledge of certain restrictive easements or encumbrances, waives any objection as to those encumbrances." (*Rock Island YWCA v. Bestor* (1977), 48 Ill. App. 3d 761, 765, 363 N.E.2d 413, 416.) Inland should have rescinded the contract when it learned of the right of first refusal or required the Markiewiczes to obtain a waiver of the right from the Marcys prior to closing on the property. (See *Rock Island YWCA*, 48 Ill. App. 3d at 765, 363 N.E.2d at 416.) We hold that Inland waived its right to object to the merchantability of title on the basis of the Marcys' exercise of their right of first refusal.

Inland attempts to hide behind the beneficial interest affidavit executed by Snyder. The beneficial interest in and power of direction over the land trust was wholly unaffected by any right of first refusal. The Markiewiczes owned the entire beneficial interest, free and clear, and were entitled, without restriction, to direct the trust's affairs. Even Inland concedes that the right of first refusal is not an interest which encumbers the power of direction of the trust.

Inland also attempts to rely on the following clause:

"The property is free of violations, and the interior and exterior structures are in a good state of repair, free of leaks and structural problems. The property is in full compliance with City and County ordinances, and no one has a lease that exceeds the normal one-year term at current market rents, nor has an option to purchase or extend."

The clause clearly indicates that the phrase "option to purchase or extend" refers back to the word "lease." Since the Marcys' right of first refusal was not part of a lease, this clause does not protect Inland. We, therefore, affirm the summary judgment granted against Inland.

For the foregoing reasons, we reverse the vacation of the default judgment order entered against the Markiewiczes as to liability and reinstate that order and we reverse the summary judgment granted in favor of the Markiewiczes and against the Marcys and affirm the summary judgment granted in favor of the Markiewiczes and against Inland.

Affirmed in part; reversed in part and remanded.

CAMPBELL and MANNING, JJ., concur.