DEON SEILER *et al.*, Plaintiffs-Appellants, v. ZEIGLER COAL HOLDING COMPANY, Defendant (Old Ben Coal Company *et al.*, Defendants-Appellees).

Fifth District    No. 5—00—0637

Opinion filed December 23, 2002.

George C. Lackey, of Lackey & Lackey, P.C., of Centralia, for appellants.

Roger H. Seibert, of Johnson, Seibert & Bigham, of Pinckneyville, for appellee Old Ben Coal Company.

Ronald J. Giacone and R. James Giacone II, both of Benton, for appellees Timothy Bauman and Tina Bauman.

Robert Michael Drone, of Conger & Elliott, P.C., of Carmi, for appellees Carl V. Gates and Donald G. Gates.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Clarence Deon Seiler and Fred Seiler (plaintiffs) filed suit against Zeigler Coal Holding Company, Old Ben Coal Company, Timothy Bauman, Tina Bauman, Carl V. Gates, and Donald G. Gates (defendants) in the circuit court of Franklin County. Plaintiffs sought damages regarding an interest in minerals they claim as successors to parties to a covenant. The circuit court granted defendants' motion for summary judgment. On appeal, the issue is whether the covenant was a personal undertaking that has expired by virtue of the death of the original parties. We affirm.

## FACTS

I.W. Reagin, Marion E. Reagin, and Belle Seiler inherited three tracts of real estate as heirs of C.W. Reagin and Josephine Reagin. C.W. Reagin met his demise on December 30, 1930, and Josephine Reagin met her demise on October 21, 1944. On November 27, 1946, I.W., Marion, and Belle, and their respective spouses, signed a document entitled "Covenant."

The agreement described three parcels of land and stated that the parties had agreed to divide the land by transferring full title of the tracts, with parcel 1 going to I.W., parcel 2 to Belle, and parcel 3 to Marion. The agreement stated, "[P]arcels 1 and 3 include all mineral rights and parcel 2 for surface only, the mineral rights having been heretofore conveyed to others." The agreement then stated as follows:

"WHEREAS it is the desire of all said parties that the minerals underlying said tracts 1 and 3 be shared in equally by each of said parties, but it is also the deswire [sic] of the parties that title to the mineral rights be not separated as a matter of record so as to expose such mineral rights to separate taxation;

NOW[,] THEREFORE[,] it is hereby mutually agreed by and between said parties that all net proceeds from the sale or exploitation of such mineral rights shall be divided between the parties hereto, each to take one[-]third thereof.

IT IS FURTHER AGREED by and between said parties that the record owners of said tracts 1 and 3 shall consult the other parties hereto and obtain the consent of both of them, prior to leasing, selling[,] or otherwise disposing of or exploiting such mineral rights.

IT IS FURTHER AGREED by and between said parties that this agreement shall be binding on the parties hereto and their respective heirs, personal representatives[,] and assigns[ ] and shall constitute, with reference to tracts 1 and 3, a covenant running with the land."

The heirs executed deeds conveying the tracts of land, conveying parcel 1 to I.W., parcel 2 to Belle, and parcel 3 to Marion. The agreement was recorded with the Franklin County recorder of deeds on July 27, 1955.

I.W. Reagin died intestate on July 5, 1955, still owning parcel 1 and leaving as heirs-at-law his widow, Ruth Reagin; Belle Seiler's children, Grace Seiler and Clarence Seiler; and his brother, Marion E. Reagin. In separate quitclaim deeds, Grace Seiler and Clarence Seiler conveyed to Ruth Reagin all real estate interests inherited from I.W. Both of these deeds mentioned the mineral rights in parcel 3. Ruth Reagin then conveyed to Marion Reagin all of her interest in parcel 1 and the minerals underlying parcel 3 in a deed dated October 8, 1955.

Defendants Timothy Bauman, Tina Bauman, Carl Gates, and

Donald Gates are the successors to the interests of Marion Reagin. In 1994 these defendants sold their interests in the minerals underlying parcel 3 to defendant Old Ben Coal Company.

Plaintiffs (Clarence Deon Seiler and Fred Seiler) are the heirs to the interests of Belle Seiler. Plaintiffs brought this action for breach of covenant, trespass, and conversion. They complain that defendants have exploited the minerals in parcel 3 without plaintiffs' consent or just compensation. Defendants filed a motion for summary judgment. As a part of their response, plaintiffs pointed to title opinions that had been prepared for defendant Zeigler Coal Holding Company, the parent company for defendant Old Ben Coal Company. Plaintiffs pointed out that the opinions noted that while I.W.'s interest in the minerals underlying parcel 3 arising out of the agreement had been conveyed to the record owner of parcel 3, there had been no similar conveyance by the heirs of Belle Seiler. One of the title opinions stated, "[Q]uitclaim deed or instrument showing consent on the part of Freddie G. Seiler and Clarence D. Seiler as surviving heirs of Grace Seiler, Clarence Seiler, and Frank Seiler should be obtained to indicate that they have no claim to any share in the minerals or proceeds of the minerals underlying the captioned premises."

The trial court granted a summary judgment for defendants. The court stated in part as follows:

> "In examining the 'Covenant', the court finds the same to be a personal undertaking that expired at the deaths of the parties to the covenant. As noted above, no severed mineral interest was created by the covenant. Instead, the three heirs entered into a personal undertaking to share net proceeds '... *between the parties hereto.*' The requirement of Marion, the owner of Parcel 3, to obtain the consent of Ira and Belle is stated '... shall consult the *other parties hereto* and to [sic] obtain the consent of *both of them.*' The personal characteristics of the covenant are further underscored by the fact that the original parties clearly did not choose to record the agreement as they did their deeds. Not recording the agreement at the time the deeds were recorded is consistent with the terms of the covenant that full title pass to Marion on Parcel 3 and the minerals not be severed of record. The covenant served as a secret agreement to avoid separate taxation of the minerals. As stated above, the goal was accomplished. Plaintiffs rely on the paragraph of the Covenant that it is '... binding on the parties hereto and their respective heirs, personal representatives[,] and assigns and shall constitute, with reference to tracts 1 and 3, a covenant running with the land.' However, such language in a contract requiring personal duties does not negate the implied condition that the contract terminates on the death of the parties.

*Vogel v. Melish*[,] 31 Il[l]. 2d 620[ ] (1965) [*sic*][;] *Aldrich v. Aldrich*[,] 260 Ill. App. 333 (1st Dist. 1931)[;] *Galler v. Galler*[,] 32 Il[l]. 2d 16 (1964)[;] *Marcy v. Markiewicz*[,] 233 Ill. App. 3d 801 (1st Dist. 1992).

The court further finds that because the covenant was a personal undertaking with no present interest in the minerals but only a contingent contractual interest in the net proceeds, the same did not violate public policy." (Emphasis in original.)

Plaintiffs appeal.

## ANALYSIS

The threshold issue to this appeal is whether the covenant was a personal undertaking that has expired by virtue of the death of the original parties. Plaintiffs contend that they received an interest in the mineral rights, or at least a right to the proceeds from a sale of the minerals, because the covenant ran with the land and extended past the lives of the parties to the agreement. The plain language of the document, and case law interpreting similar agreements, leaves no issue regarding whether the agreement was limited to the lives of the signatories of the covenant.

In *Marcy v. Markiewicz*, a similar provision was held to be a personal agreement. *Marcy v. Markiewicz*, 233 Ill. App. 3d 801, 804, 599 N.E.2d 1051, 1053 (1992). In *Marcy*, the plaintiffs and the defendants entered into a partnership agreement for the purpose of constructing buildings on two pieces of realty. The parties entered into a dissolution agreement that read as follows:

" '(15) If at any time hereafter[ ] MARKIEWICZ receives from a ready, willing[,] and able purchaser an acceptable bona fide offer to sell to such purchaser[ ] Parcel B or any part thereof, or any property which includes all or part of Parcel B, MARKIEWICZ shall give to MARCY and SONS notice, specifying the name and address of the purchaser and the price and terms of the offer[,] accompanied by MARKIEWICZ'S affidavit that the proposed sale is in good faith. MARCY and SONS shall thereupon have the prior option to purchase Parcel B or the part thereof or the entire property covered by such offer at the price and on the terms of the offer, which option MARCY and SONS may exercise by giving MARKIEWICZ notice within 15 days after their receipt of MARKIEWICZ'S notice of the offer ***.

* * *

(19) This Agreement shall be binding upon and inure to the benefit of the respective heirs, devisees, legatees, personal representatives, executors, administrators[,] and assigns of the parties hereto.' " *Marcy*, 233 Ill. App. 3d at 803-04, 599 N.E.2d at 1053.

The Markiewicz who had entered into the agreement gifted a portion of the land trust to his children. Parcel B was later sold to another party, Inland Real Estate Corp. The Marcys then filed a complaint for specific performance. Inland Real Estate Corp. filed a cross-motion for summary judgment against the Markiewiczes. The Markiewiczes moved for a summary judgment against the Marcys and Inland Real Estate Corp. They claimed that the right-of-first-refusal provision violated the rule against perpetuities. The trial court granted the Markiewiczes' motions for summary judgment.

On appeal, the appellate court found that there was no violation of the rule against perpetuities because the agreement was personal between the parties entering the contract and did not last beyond the lives of those parties. The court distinguished *Martin v. Prairie Rod & Gun Club*, 39 Ill. App. 3d 33, 348 N.E.2d 306 (1976). In *Martin*, an agreement was found to have violated the rule because it contained very specific language giving the sellers' heirs a right of first refusal to buy the land back. The language in *Martin* read as follows:

> " 'If[,] after the death of [Charles and Rena Pence], [the defendant] shall wish to sell all the [farm] or any part thereof, then the [defendant] promises and agrees to give to the heirs of [Charles and Rena Pence] the option to purchase said lands or any part thereof, upon the conditions and terms to be prescribed by [the defendant].' " (Emphasis omitted.) *Marcy*, 233 Ill. App. 3d at 810, 599 N.E.2d at 1057, quoting *Martin*, 39 Ill. App. 3d at 34-35, 348 N.E.2d at 307.

In contrast, the language in *Marcy* expressly stated that "MARCY and SONS" were entitled to notice of a proposed sale and to have the right of first refusal. The appellate court debunked the trial court's holding that paragraph 19 gave the heirs the power to exercise the right. In citing to other cases in which language similar to paragraph 19 had been used, the court found that because the language granting the right was personal to the parties, the additional paragraph did not extend the right to the heirs. *Marcy*, 233 Ill. App. 3d at 811, 599 N.E.2d at 1057, citing *Vogel v. Melish*, 31 Ill. 2d 620, 626-27, 203 N.E.2d 411, 414 (1964); *Galler v. Galler*, 32 Ill. 2d 16, 31, 203 N.E.2d 577, 586 (1964).

Similarly, the language granting rights in this agreement was personal to the parties. The plain language of the agreement supports the trial court's determination that the agreement was a personal undertaking between the parties. As the court aptly noted, the provision describing a distribution upon a sale stated that it had been agreed "between said parties" that the net proceeds should "be divided between the parties hereto." The next paragraph creating a restric-

tion on a sale stated that "the record owners" of said tracts should consult "the other parties hereto" and "obtain the consent of *both of them*" (emphasis added) prior to a sale or lease. The said "parties hereto" were the signatories—I.W. Reagin, Belle Seiler, and Marion Reagin. Unlike the language in *Martin*, the language granting rights was personal to the signatories. *Martin*, 39 Ill. App. 3d at 34-35, 348 N.E.2d at 307. The subsequent binding of heirs, successors, and assigns did not enlarge the grant. See *Vogel*, 31 Ill. 2d at 622, 203 N.E.2d at 412; *Galler*, 32 Ill. 2d at 31, 203 N.E.2d at 586. As in *Marcy*, the language granting rights was personal to the parties.

Plaintiffs claim that reading the document as a personal agreement would render certain language nugatory. Plaintiffs point to the following language in the agreement: "[T]his agreement *** shall constitute, with reference to tracts 1 and 3, a covenant running with the land." This language serves a purpose and does not make the agreement ambiguous on any issue in this case.

Defendants distinguish the "covenant" in this case from those in cases that are discussed in detail by plaintiffs. Unlike in cases relied upon by plaintiffs, the covenant in the case at hand was not in the document conveying other interests in the property. *Cf. La Salle National Trust, N.A. v. Village of Westmont*, 264 Ill. App. 3d 43, 71, 636 N.E.2d 1157, 1174 (1994) (an easement agreement); *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 185, 457 N.E.2d 1226, 1228 (1983) (condominium declarations); *Mathis v. Mathis*, 402 Ill. 60, 68, 83 N.E.2d 270, 274 (1948) (a deed of conveyance); *McAnelly v. Graves*, 126 Ill. App. 3d 528, 531, 467 N.E.2d 377, 378 (1984) (a coal lease); see also *Bowes v. City of Chicago*, 3 Ill. 2d 175, 197, 120 N.E.2d 15, 28 (1954) (a covenant in a contract was restricted by a deed conveyed in the effectuation of the contract). Furthermore, the covenant in this case is not attached to an easement or a lien that specifies a certain debt. *Cf. C-B Realty & Trading Corp. v. Chicago & North Western Ry. Co.*, 198 Ill. App. 3d 926, 930-31, 556 N.E.2d 634, 636-37 (1990); *La Salle National Trust, N.A.*, 264 Ill. App. 3d at 74, 636 N.E.2d at 1176; *Streams Sports Club, Ltd.*, 99 Ill. 2d at 188, 457 N.E.2d at 1231; *Mathis*, 402 Ill. at 68, 83 N.E.2d at 274. Indeed, these distinctions raise questions of whether a covenant was created or whether the document was an impermissible attempt to avoid taxation by not conveying a property interest in the deed while later claiming that a vested interest had been bestowed in order to avoid the rule against perpetuities. See *Fairways of Country Lakes Townhouse Ass'n v. Shenandoah Development Corp.*, 113 Ill. App. 3d 932, 935, 447 N.E.2d 1367, 1369 (1983) (the agreement was not a covenant *per se*, but a reservation of rights).

If the document had been written differently, these distinctions would be more central to our discussion. Plaintiffs' interpretation rests upon an apparent contradiction between claiming that the covenant created only personal benefits and claiming that it ran with the land. A closer look at the language of the document, however, clears up what would otherwise seem to be a contradiction. The covenant in this case made no claim for the *benefit* to run with the land. The covenant in this case states that the running with the land was only to the *binding* of the heirs, personal representatives, and assigns of tracts 1 and 3.

■ The questions of whether a covenant binds the successors of a party and whether the successors of another party may enforce a covenant are distinct matters of contractual intent that should be viewed separately. This is an accurate statement of the law, both now and at the time the parties entered into the agreement. Compare Restatement of Property §§ 530 through 538 (1944), with Restatement of Property §§ 541 through 544 (1944); see Restatement (Third) of Property § 4.4 (1998). Section 544 of the Restatement of Property states "The benefit of a promise respecting the use of land of the beneficiary of the promise runs with land only in so far as it was intended by the parties to the promise that it should run." Restatement of Property § 544, at 3260 (1944).

Comment *a* to section 544 states in pertinent part as follows:

> "A promise respecting the use of land of the beneficiary of the promise, and to that extent capable of running with the land, may, nevertheless, be intended by the parties to it to be personal to and to be enforceable only by the promisee or by those who are, by virtue of the terms of the promise, beneficiaries of it. Such an intention will be effective to prevent the benefit of the promise from running." Restatement of Property § 544, Comment *a*, at 3260 (1944).

Unlike promises respecting the use of land that could only be realized by those in possession of beneficiary property, such as the maintenance of a bridge, road, or dam, there is no reason in this case to infer that the benefit of the promise runs, when the language is specific to only binding the beneficiaries. See Restatement of Property § 544, Comment *a* (1944); see also Restatement of Property § 544, Comment *b* (1944) (to be entitled to enforce a promise, a party must show that the benefit of the promise was intended to pass to the successors of the original beneficiaries).

In light of the distinction between a benefit and a burden, any apparent inconsistency disappears. Given this distinction, under the plain language of the document the burden ran with the land to bind

the original parties and their successors but was enforceable only by the original parties. Indeed, this is the result reached by other courts when faced with similar language. See *Harrison v. Domergue*, 274 Cal. App. 2d 19, 21, 78 Cal. Rptr. 797, 798 (1969) (a preemptive-right agreement with a clause reading "binding upon all of the parties hereto [and] their heirs, executors, administrators[,] and assigns[ ] and shall be considered as a covenant running with the land" was held to be enforceable only as long as one of the original parties was alive); see also *Gore v. Beren*, 254 Kan. 418, 434, 867 P.2d 330, 341 (1994); *HSL Linda Gardens Properties, Ltd. v. Seymour*, 163 Ariz. 396, 397, 788 P.2d 129, 130 (1990). Extinguishing the covenant at the death of the signatories not only addresses problems with perpetuities, but it is also consistent with the history and function of the concept of a "covenant running with the land." See C. Moynihan, Introduction to the Law of Real Property, at 96-97 (2d ed. 1988).

■ Plaintiffs' interpretation of "covenant running with the land" invites a discussion of the evils of restraints on alienation and the history of property law in dealing with such a sin. That dissertation is not necessary, however, because the language granting a right to restrict a transfer is limited to the signatories to the agreement.

The only language granting any benefit was limited to the parties personally. The language binding the owners of the different parcels created obligations specific to the signatories. According to the plain language of the document, any potential for liability under the agreement ceased, at the latest, when the last remaining party to the agreement died. Reference to any other documents extraneous to the agreement or to the recording of any documents is not necessary to reach this conclusion.

We need not discuss whether the agreement was unenforceable as an attempt to avoid taxation or whether it violated the rule against perpetuities. Questions of whether the agreement expired upon the death of the first party, whether it extended until the demise of the sole survivor, or whether it was void *ab initio* are irrelevant to deciding this case because all the parties to the agreement are now deceased.

Accordingly, we affirm the order of the circuit court of Franklin County granting the summary judgment to defendants.

Affirmed.

HOPKINS, P.J., and CHAPMAN, J., concur.